JAMES MARTIN *et al.*, plaintiffs in error, *vs.* THE STATE OF GEORGIA, defendant in error.

The bill of exceptions in this case was a general one, that the jury found contrary to law and evidence:

*Held*, That there was not sufficient legal evidence to sustain the verdict.

Burglary.   Motion for new trial.   Decided by Judge WORRILL.   Muscogee Superior Court.   May Term, 1868.

James Martin and Paul Key, two negroes, were indicted for breaking and entering the store-house of James Bradford, in March, 1868, in the night time, with intent to steal therefrom, etc.   They were tried and found guilty, with a recommendation, by the jury, that they be imprisoned in the penitentiary for life.   Their attorney moved for a new trial, upon the ground that said verdict was contrary to law, and not warranted by the testimony.   The motion was overruled, and the prisoners were sentenced to hard labor in the penitentiary for and during their natural lives.   Thereupon, a writ of error was sued out, upon the ground that the Court erred in refusing a new trial.

The evidence showed that the store-house was broken, as charged.   The hinges of the window were broken off with an axe.   The money-drawer, containing three dollars and a half, was moved from its place.

The question was, who did this wrong?   The evidence to show that the defendants were the perpetrators was as follows:   The owner of the store-house testified, that he saw Martin at his store-house, just before he closed it, on the evening of the burglary.   Americus McDonald, a negro, testified, that he found out next morning that said burglary had

been committed ; that between eight and nine o'clock, on the night of the breaking, he passed by the store-house, and saw Martin and a white boy sitting on a bench, in front of it. The owner was counting his money. The witness asked Martin what he was doing there at that time of the night. About an hour later, witness passed them again, and saw the white boy on said bench, and, as he passed the gate, he looked in at a hole and saw Martin in the back yard of the store-house.

Fanny Bell, a negro, testified, that at the time of the burglary she lived on an alley back of " The Muscogee Home;" that about half after twelve o'clock that night, she saw Martin at said store-house ; that about fifteen minutes before that, Paul Key and Martin came to her house, and told a negro, named Sarah, not to go into the street that night, because the Marshal was waiting for her; that in a little while she, witness, went out into the street to look for the Marshal, and saw no one.

Robert Wood testified, that about midnight, on said night, he went to the house of Jim McHenry, because of a family quarrel there, and there saw Martin ; that he went to the corner of " The Muscogee Home," and there saw Paul Key ; that about two o'clock, he came to Gunby's old corner, (the moon was shining brightly,) looked towards Tim Markham's, and saw some one sitting on the platform in front of the store; that he walked down, and when opposite to him, rose up and gave a signal ; that, at that moment, he looked towards the said store-house, and saw a man coming from the corner, running ; the man moved rather in a circle, and went to the door of " The Muscogee Home;" witness went to him; he had his hat down over his face ; witness said, " Jim, what are you doing here ?" He said he " was waiting for a gal." All the while witness was looking towards said store-house, and saw some one leave said bench or watermelon stand, and go across the street; witness headed him off; it was Paul Key; shortly afterwards witness noticed that said window was open ; went to the window, put his hand in at it, and found a money-drawer; it occurred to him that Mar-

tin and Key were the guilty parties; witness started immediately, and as he did, Martin left "The Muscogee Home," and Key left the corner at Dr. Grimes's; he started after them; they ran, and got together at Gunby's corner; he pursued them into an alley and lost them; about an hour later he arrested Martin, and about two hours later, he arrested Key; he examined them carefully, and found in Martin's pocket a long-bladed knife open; he found nothing on Key.

The testimony for the defence was as follows: Said Martin admitted being at McHenry's, and seeing Wood at " The Muscogee Home," and saying to him that he was " waiting for a gal;" he said he did not see Key break into the store-house.

Said Key testified that he knew nothing of Martin's breaking into said store-house, and knew that Martin did not break into it.

Josephine Harris, a negress, testified that she was the girl for whom Martin was waiting, that she came with him to "The Muscogee Home," and went up stairs to see a man.

RAMSEY & RAMSEY, (by JAS. RUSSEL,) for plaintiff in error.

C. J. THORNTON, Solicitor General, for the State.

BROWN, C. J.

Placing ourselves in the position of jurors trying this case, and applying the known rules of law to the evidence given in on the trial, we are not satisfied that the guilt of the defendants has been legally established. The rule of law, as we understand it, is, that the facts established by the evidence must not only be consistent with the hypothesis of the defendant's guilt, but must exclude every other reasonable hypothesis. In a case involving life, or penitentiary imprisonment for life, this rule should not be relaxed.

Apply the legal rule to the case of Paul Key, and we are at a loss to see how this verdict could stand for a moment. It is difficult to reconcile the evidence as to this defendant

with the hypothesis of guilt, while there may be many other reasonable hypotheses not excluded by it.

The proof against Martin is consistent with the hypothesis of his guilt, but not inconsistent with other reasonable hypotheses. He was seen more than once that night at the house where the burglary was committed by some one, and was in the back lot of the store, if the witness is not mistaken. This raises a strong presumption of guilt, when taken in connection with the fact that he ran when pursued by the policeman. But to rebut this presumption, we have his statement made at the moment, without time for meditation, that he was there waiting, as he said, for a "gal." It is in proof that the "Muscogee Home," a house where young men slept, was near by, and Josephine Harris swears that she was the girl Martin was waiting for, and that she went with him to the "Muscogee Home," and went up stairs to see a man. He may have been engaged to carry her and others to that house for the same purpose, and this may have been the reason why he pulled his hat over his face, and did not wish to be seen and recognized by the policeman, and the reason why he ran when pursued. Such a hypothesis is not an unreasonable one, when taken in connection with the further fact that no money was found upon his person when he was arrested. Again, the policeman swears that he put his hand into the window of the store-room, and felt the money drawer, and that the pursuit commenced immediately afterwards. He does not pretend that he removed the drawer out of the house, while the owner swears he found it in the yard next morning. From this, it appears that some one besides Martin handled the drawer that night.

It was a very public place in the city of Columbus; and the proof shows that there were a number of persons about the store-house, and the "Muscogee Home," and McHenry's house near by, where there was a family difficulty to settle, which required the aid of a policeman after midnight.

Looking through this evidence, who can say that his mind is satisfied beyond a reasonable doubt, that Martin and Key committed the burglary? May it not have been done by other

persons about the premises the same night? We are not satisfied that it was not. The evidence was not sufficient to bring the mind to a ready conclusion of the gilt of the defendants.

We think the following evidence of Mr. Wood, the policeman, was illegal, and should not have gone to the jury: He says he went to the store-window, and put his hand in the window, and found the money-drawer. It *occurred* to *witness in a moment that Jim Martin and Paul Key were the guilty parties;* started immediately, etc. This statement was calculated to have an undue weight with the jury, when it was a mere conjecture of the witness, growing out of the fact that he had seen them both near the store. If he had happened to have seen two others of the numerous persons who were about the store-house that night, most probably it would have occurred to him that they were the guilty parties. He should have stated the *facts*, and this conjecture should have been withheld. Upon the whole, we are satisfied that a new trial should have been granted.

Judgment reversed.