THORNTON CARTER, plaintiff in error, *vs.* THE STATE, defendant in error.

1. Circumstantial evidence to warrant a conviction of one accused of a crime, must be so strong as to exclude every other reasonable hypothesis than that of the prisoner's guilt of the offense with which he is charged.
2. Newly discovered evidence tending to prove a fact material to the issue, and about which the defendant had offered no testimony on the trial, and he is chargeable with no want of diligence, entitles him to a new trial.

Criminal law. Circumstantial evidence. Newly discovered evidence. Before Judge COLE. Bibb Superior Court. October Adjourned Term, 1872.

Thornton Carter was placed on trial for the offense of burglary in the night time, in breaking and entering the store room of James H. Blount, with the intent to commit a larceny. The defendant pleaded not guilty. The following evidence was introduced :

FOR THE STATE.

Maria Lucas, sworn : Witness identifies prisoner; went to see him on Thursday, at his house, and saw some rice and peas on the table; defendant appeared to object to witness' entering the house; also, saw a jar of preserves, which the inmates of the house moved, together with other things, as witness entered; some of the peas were not shelled; they

were speckled peas; saw some flour bread on the table; the house had two rooms; saw some bags in the back room, which defendant's wife was ripping up; the bags appeared to be dirty with grease; the women went into the other room and whispered together when witness entered the house; defendant said there was not much fire in the room, but witness found, on entering, that there was a good fire; defendant stated that he had seen witness' brother, who had informed him that witness had left Mr. Blount's, or he would have been up to see witness; the store is in the basement of the house; the windows open like a door, with four horizontal pieces of plank fastened on each side, and four augur holes in each; witness went into the room on the next morning at about half past five o'clock, before the break of day; found meat, meal, rice and peas; witness lives at the house; there were speckled peas in the store room in the shell; the peas were missing; a jar of lard was gone, and also a jar of preserves; saw a jar at defendant's house closely resembling the jar lost from the store room; it had the same name on it; witness recognized it from the rag that was on it; there were sacks in the store room, and some off of the meat box were missing; the sacks resembled those at defendant's; defendant had been a driver at Mr. Blount's; the corn was kept in the store room; defendant frequented the room to get corn for the horses, but was not living there at the time; witness saw defendant that day at the dirt bridge, about fifty yards from the house; the property stolen belonged to Mr. Blount; the room was broken open on Wednesday; the cloth on the preserve jar was white, tied with a black string and dirty with dust; the bags were fine corn sacks, such as corn is ordinarily shipped in; the two rooms in defendant's house adjoined; witness was at defendant's house about one half hour, a little before four o'clock; defendant was living at Collinsville; defendant said that he thought witness left Mr. Blount's when Sam Perry left; Sam had left some two weeks previously; defendant had been to see witness after Sam left.

William Taylor, sworn: Witness recollects defendant's be-

ing placed in the guard house; witness asked him about some meat, rice and peas which were in his house on Thursday; may have asked him about flour; defendant said that he did not have them, only some flour that he had bought some time before the breaking open of Mr. Blount's room; this occurred on the morning after defendant was placed in the guard house; Mr. Blount resided in Bibb county; Collinsville is in Bibb county.

Mr. Blount, sworn: Witness' store room was broken open on Wednesday night before the last; witness had Carter arrested the next night; witness visited the guard house the next day with Lieutenant Taylor; Taylor had a conversation with defendant; defendant had been in the employment of witness, but had left during the Christmas holidays; witness had peas in the hall in his house; the articles mentioned in the indictment were gone; the breaking was done, witness thinks, by some one acquainted with the premises; the property stolen belonged to witness.

FOR THE DEFENDANT.

Anna Dawson, sworn: Witness lives in Collinsville, on her own lot, with her mother; Mary Lucas came to witness' house on Thursday a week ago; she was talking to witness' brother; witness did not hear the conversation; went, on Wednesday, with her brother, the defendant, to the Blind Asylum, at about half past five o'clock, P. M.; thence, down town to carry clothes; thence to church, and reached home by ten o'clock; Mrs. Sarah Lowe and Mrs. Harris were present when the defendant and witness arrived at home; defendant went at once to bed; there are four rooms in witness' house; defendant sleeps in the back room, and has to pass through witness' room to get out of the front door; saw defendant the next morning, when witness got up; witness got up first; there was an outside door in defendant's room that led into the back yard; there was nothing on the table but witness' ironing things, some glasses, covered with a towel and some shirts; there was nothing eatable on the table; on

Wednesday night there was no one present except the family; defendant had been sick, but was well enough to go to church with witness; it was the first time that he had been out for three weeks; defendant had a room which he occupied with his wife; the house is weather-boarded; defendant did not leave home on Wednesday night; cannot state if any one was there while witness was away; defendant was over to Mr. Riley's on Wednesday evening.

Alice Smith, sworn: Defendant lives in one of the back rooms of the same house with witness; was at home on Wednesday night; no one but the family were there; defendant was at church and came home about ten o'clock; does not know that defendant went to church that night beyond what he stated.

### STATEMENT OF DEFENDANT.

"I was sick in bed part of the week, waited on by the Ring Dove Society; Tuesday night my brother came to see me and made a fire for me; on Wednesday I felt better and walked about; Wednesday evening, about 5½ o'clock, I went with my sister to my mother's at the Blind Asylum. Sister went down to Mr. Winship's store to carry Mr. O'Neal's shirts; when she came back to mother's I had a fire made in mother's room; that was about 8 o'clock; after supper we went to church; it was very cold and, being unwell, I proposed to go home; when near Polhill's schoolhouse I met Jane Richards and Fanny Jewett, and they said to me, "where are you going?" I replied "home," and they induced me to go to church with them. After church my sister, Georgia Tompkins and myself started home together; I met Alick Day in front of Mr. Wheeler's gate and we proceeded home together."

The jury returned a verdict of guilty, and defendant moved for a new trial upon the following grounds, to-wit:

1st. Because since the said trial defendant has discovered that Maria Lucas, the principal material witness for the State, made to various parties different statements as to the

offense charged in the indictment, at one time alleging that she absolutely knew nothing of the facts of the case or the cause of defendant's arrest, and at another time alleging that she knew defendant committed the offense for the reason that she had tracked defendant to the house where the offense had been committed.

2d. Because since said trial defendant has discovered that said Maria Lucas, witness as aforesaid, is a woman of desperately bad character, and that her reputation for want of veracity and truthfulness is so great and apparent that she is not worthy of credence in any Court of justice.

3d. Because since said trial defendant has discovered that certain articles which said Maria Lucas has testified as having seen in the house in which defendant was at the time said witness came there, were sent by Harriet Thomas, the owner of the house, from the Blind Asylum in the city of Macon, and could have been identified by said Harriet Thomas.

4th. Because at the time of the trial defendant, being wholly illiterate and knowing nothing of the law or the rules of evidence, he had not brought to the knowledge of counsel the fact that the room in which Maria Lucas had testified to seeing the articles which she recognized as the property of J. H. Blount, was not the place of abode of defendant, but the abode of Anna Dawson and family; that defendant lived in another part of the house, which contained four rooms occupied by different persons.

5th. Because said verdict is contrary to the evidence and the law.

In support of the grounds based upon newly-discovered evidence, affidavits of the witnesses, defendant and of his counsel, all in proper form, sustaining the grounds as set forth, were annexed.

The motion was overruled by the Court, and plaintiff in error excepted and assigns said ruling as error.

Carter *vs.* The State.

M. B. Guerry, represented by James Jackson, for plaintiff in error.

E. W. Crocker, Solicitor General; Samuel Hall; R. W. Jemison, represented by G. W. Gustin, for the State.

Montgomery, Judge.

1. The verdict of guilty in this case is based entirely upon circumstantial evidence, which we hardly think excludes every other reasonable hypothesis but that of the prisoner's guilt. No article seen by the only witness who undertakes to identify them is sufficiently proven to bear more than a resemblance to the missing articles of the prosecutor. Nor were the articles shown to be in the possession of the defendant, but only in a house of which he was an inmate, his own domicil being a room different from that in which the articles supposed to be those stolen, were found. But suppose the articles identified and proven in the possession of the defendant, does that show burglary in the night time? Or does the whole evidence exclude every other reasonable hypothesis than the guilt of burglary in the night time? Is it not equally reasonable to suppose that the defendant has been guilty of receiving stolen goods, knowing them to be stolen?

2. We think also the testimony of Harriet Thomas, if it had been before the jury, might have altered their verdict. It is material, and we cannot say there was any *laches* on the part of the defendant in not having it before the Court on the trial.

Upon the whole, we think a new trial should be granted.

Judgment reversed.