## 30274. HARRIS v. THE STATE.

HILL, Justice.

Larry Jerome Harris and James Reginald Everett were tried jointly for murder and armed robbery and found guilty of both offenses. Harris appeals his sentences of life for murder and twenty years for armed robbery to run concurrently.

The evidence at trial was that the victim was a member of the armed services stationed at Fort Benning. He had received approximately $1,000 in advance pay because he was being transferred to Germany and had hidden all but $200. The victim told his friend Harris that he had received advance pay. On the morning of November 4, 1974, Harris told Everett, who also knew the victim, about the money. That evening at about 6:30 or 7:00 o'clock, Harris and Everett came to the apartment where the victim and his wife lived. They had a conversation with the victim which his wife did not hear. After 15 or 20 minutes they left. The victim took some clothes to the laundry room in the next building. Later his wife came down and saw Harris and Everett leaving the laundry room. She found that she did not have any soap powder, and went back upstairs to the apartment to get some. When she came down again she saw Harris, Everett and her husband on the sidewalk. She heard Harris ask her husband if he could use his phone. The three men went up to the apartment and she went into the laundry room. A little later Harris came into the laundry room. She asked him what her husband was doing, and he said that her husband and Everett were discussing a $10 debt. As he left, she asked him to tell her husband to bring her some change for the dryer. When 10 minutes had passed without her husband appearing, she started up to their apartment, passing Harris and Everett on the stairs. Harris was carrying the box she and her husband kept their valuable papers in. She did not see a gun. She found her husband lying on the kitchen floor. He died later at the hospital from a gunshot wound in the back. His wallet, $200 and the box were missing. The police later found the box not far from the apartment.

A security guard at the apartment complex testified

that Harris and Everett came to his apartment at about 7:30 that evening and that Everett asked if he could borrow the guard's gun because he had "got in trouble downtown." The security guard refused.

A neighbor testified that he saw two men running from the apartment building that evening at about 8 or 9 o'clock and that he heard one of them say "Come on, let's go." He was not sure which man spoke. He identified Harris as one of the men, but he was unable to identify the other man.

Each defendant testified that the other defendant acted alone in shooting and robbing the victim.

Everett admitted that he went to the victim's apartment that night and that they discussed the $10. He also admitted that he had asked to borrow the security guard's gun for protection. He testified that he did not go upstairs with the victim and Harris when Harris asked to use the phone. He said that he stayed outside sitting on the curb until Harris came downstairs and gave him some money and asked him to get another beer. He testified that when he returned to the apartment with the beer, he found the victim on the floor and Harris standing over him with a pistol in his belt. He surrendered himself to police in Savannah four days later.

Harris testified that when he returned to the apartment after he had been in the laundry room talking with the victim's wife, he found Everett holding the victim with one arm around his neck and that Everett shot him in the back. When the phone rang, Everett answered it, and then pulled the phone out of the wall. Everett picked up the wallet and money from the table. He gave Harris the box to carry and, with the gun in his hand, motioned Harris out the door. They passed the victim's wife on the stairs while Everett still had the gun pointed at Harris. Everett told him to run, which he did. Three apartment buildings away, Everett took the box from him and that is the last Harris saw of either Everett or the box. Harris testified that he ran to his own apartment, got his girl friend, and left to phone the police. The police advised him to return to the victim's apartment. He was arrested there. He claimed that he did not kill or rob the victim and that he was not part of a plan to do either one.

1. Harris contends that the verdict against him is contrary to the law and the evidence, in that in order to sustain a verdict based solely on circumstantial evidence, the guilt of the accused must be established so as to exclude every other reasonable hypothesis. Code Ann. § 38-109. Harris testified that Everett robbed and killed the victim on his own, and that he (Harris) did not plan with Everett to do this. He argues that his testimony shows a reasonable hypothesis of his innocence.

Code Ann. § 38-109 provides that: "To warrant a conviction on circumstantial evidence, the proved facts shall not only be consistent with the hypothesis of guilt, but shall exclude every other reasonable hypothesis save that of the guilt of the accused."

The provisions of Code Ann. § 38-109 were codified from *Martin v. State,* 38 Ga. 293, 295 (1868), and *Carter v. State,* 46 Ga. 637 (1872). In those cases, the reasonable hypothesis rule was used by this court to determine the sufficiency of the evidence, and new trials were granted because the evidence did not exclude every other reasonable hypothesis save that of guilt.

Having originated as a rule by which to test the sufficiency of the evidence, this court later required that, except in clear and indubitable cases, the rule be given in charge to the jury, even in the absence of request, where the evidence was entirely circumstantial. *Hamilton v. State,* 96 Ga. 301 (22 SE 528) (1895); *Jones v. State,* 105 Ga. 649 (31 SE 574) (1898); *Germany v. State,* 235 Ga. 836 (2) (1976).

Thus, the question of whether there was a reasonable hypothesis favorable to the accused became a question for the jury. The Court of Appeals correctly stated the rule in *Smith v. State,* 56 Ga. App. 384, 387 (192 SE 647) (1937) as follows: "Whether or not in a given case circumstances are sufficient to exclude every reasonable hypothesis save the guilt of the accused, is primarily a question for determination by the jury. This of necessity is so, for we have no legal yardstick by which we can ordinarily determine what in a given case is a reasonable hypothesis, save the opinion of twelve upright and intelligent jurors. After having heard the witnesses and having observed them testify, they are more capable of

judging of the reasonableness of a hypothesis produced by the evidence, or the lack of evidence, and the defendant's statement, than is a court of law. However, this court as a court of law, where there appears a hypothesis from the evidence, or from the lack of evidence and the defendant's statement, pointing to the innocence of the accused, and which tested by all human experience is a reasonable one, may declare it so as a matter of law."

The holding in *Smith v. State,* supra, was: Questions as to reasonableness are generally to be decided by the jury which heard the evidence and where the jury is authorized to find that the evidence, though circumstantial, was sufficient to exclude every reasonable hypothesis save that of guilt, the appellate court will not disturb that finding, unless the verdict of guilty is unsupportable as a matter of law.

*Smith v. State,* supra, has been followed by the Court of Appeals. See *Townsend v. State,* 127 Ga. App. 797, 799 (195 SE2d 474) (1972), and cits.

We find that *Smith v. State,* supra, enunciated the correct rule for determining the sufficiency of the evidence in convictions based entirely on circumstantial evidence.

In the case before us the jury was charged as to the state's burden of proof beyond a reasonable doubt and was charged as to the reasonable hypothesis rule. The jury found defendant Harris guilty. The evidence was sufficient to authorize the jury to find the defendant guilty and our review convinces us that the verdict is not unsupportable as a matter of law.

2. Harris contends that the trial court erred in charging the jury on conspiracy because there was no evidence that suggests a conspiracy between the two defendants.

The existence of a conspiracy may be shown by circumstantial evidence. *McLeroy v. State,* 125 Ga. 240 (2) (54 SE 125) (1906). There is ample evidence here to authorize a charge on conspiracy: Through Harris, both defendants knew of the $1,000 advance pay; they came to the victim's apartment together twice on the night of the murder; both defendants went to the security guard's apartment to borrow a gun; Everett actually asked for the

gun and Harris secured their re-entrance into the apartment by asking to use the telephone; both men left the apartment together after the robbery and the shooting; Harris carried the box; and the two of them separated peacefully after leaving the scene of the crime. The trial court did not err by charging the jury as to conspiracy.

*Judgment affirmed. All the Justices concur.*

SUBMITTED SEPTEMBER 2, 1975 — DECIDED FEBRUARY 11, 1976.

*Allison W. Davidson,* for appellant.

*E. Mullins Whisnant, District Attorney, William J. Smith, Assistant District Attorney, Arthur K. Bolton, Attorney General, G. Thomas Davis, Senior Assistant Attorney General,* for appellee.