## 32726. WEST v. THE STATE.

MARSHALL, Justice.

The defendant appeals from his conviction of murder, for which he received a life sentence. His enumeration of errors raises the two issues of the sufficiency of the evidence to support the verdict and the alleged violation of the jury's privacy by eavesdropping on the jury room during its deliberation.

1. The appellant's principal contention with regard to the evidence is that the state failed to prove the element

of malice.

The appellant urges the adoption of that version of the evidence which supports his alternative contentions of either accident or self-defense. Under his theory of the evidence, the victim had been drinking heavily for about 15 hours; the victim was known to be a good shot and had been carrying a pistol around in his pocket all day and all night; the victim and the appellant had both been in a bar at the same time, during which an altercation, the details of which varied with the various witnesses' accounts, occurred; the victim, later that evening, drove up to the appellant's house, called out to him, "Come out, you son-of-a-bitch, I am going to kill you," whereupon the appellant, a veteran of two wars, courageously got his rifle for the defense of his home and person, walked slowly the 30 feet to the victim's truck in the truck's headlights, approached the truck and recognized the victim, who opened the truck door, hitting the appellant and making the rifle accidentally discharge, killing the victim.

However, once a jury has returned a verdict, which the trial judge approves by denying a motion for new trial, the evidence is viewed on appeal in a light favorable to the verdict, not to the defendant. See *Fleming v. State,* 236 Ga. 434, 436 (224 SE2d 15) (1976); *Ridley v. State,* 236 Ga. 147 (1) (223 SE2d 131) (1976). Thus viewed, the evidence showed that the appellant shoved a stranger off a stool onto the floor in the bar; that the appellant's brother apologized for the appellant to the stranger; that when the brother attempted to restrain the appellant, the latter pulled out a knife and had to be held at bay temporarily by his brother's pushing a chair against him; that when the victim left the bar, he appeared to be in possession of all of his faculties, and patted the appellant's hand, telling him not to worry and to take it easy; that the victim had a reputation for peacefulness and had not had any trouble with anyone at the bar; that when the appellant and his brother returned to their shared house, the brother went to sleep, while the appellant and his date continued to "party"; that the victim borrowed a truck, drove to the appellant's home and parked about 30 feet from the house; that the victim was killed by a bullet fired from the appellant's rifle from a distance of 12 inches or

less from the victim's head and traveling in a horizontal plane; that, although the victim had carried a pistol around with him all day and all night, he did not have it out when his body was found, it being still inside his pocket; that another pistol on the truck's dashboard was customarily kept there by its owner; that no scuffle marks were found in the vicinity of the truck; and that the appellant had told the deputy sheriff that the victim had threatened him and that he had shot the victim.

The question of whether there was a reasonable hypothesis favorable to the accused was a question for the jury. *Harris v. State,* 236 Ga. 242, 244 (1) (223 SE2d 643) (1976) and cits. The jury was authorized, as is this court, to disbelieve the appellant's story that he left the safe confines of his house, walked slowly for 30 feet, illuminated by his porch light and the headlights of a truck occupied by a man who was threatening to kill him, that the alleged threatener never fired a shot at him although he was armed and a "good shot," and that the appellant's rifle accidentally discharged when the truck door was opened, yet the rifle barrel was practically in the face of the victim and there were no scuffle marks to indicate such an accident. The defendant thus failed to rebut the presumption of malicious homicide, or murder, which was raised by the use of the deadly weapon. *Ogletree v. State,* 209 Ga. 413 (3) (73 SE2d 201) (1952).

The evidence authorized the verdict, and would not have authorized a directed verdict of acquittal.

2. The appellant's contention that the privacy of the jurors during their deliberations was violated by "eavesdroppers," was predicated primarily upon affidavits which showed that a juror saw an unidentified person through the translucent glass of the jury room door, from which he concluded that such person was eavesdropping. The other affidavits showed, however, that the rooms adjacent to the jury room were public areas, including the bailiff's and the county attorney's offices and a public hallway, and that numerous persons, including officials and the appellant, were occupying these areas much of the time involved. Also there was the appellant's brother, who was employed by the sheriff. There were affidavits to the effect that no one was seen

eavesdropping. Defense counsel's statements that someone had invited him to eavesdrop, if true, merely illustrates his lack of diligence in moving for a mistrial or other appropriate, timely, corrective action, or his condonation of it. None of the jurors denied his or the jury's verdict. It is highly unlikely, and has not been shown, that any prejudice resulted from the real or imagined eavesdropping alleged to have occurred.

The judgment was not error for any reason urged. *Judgment affirmed. All the Justices concur.*

ARGUED SEPTEMBER 20, 1977 — DECIDED NOVEMBER 29, 1977 — REHEARING DENIED DECEMBER 15, 1977.

*Twitty & Twitty, Frank S. Twitty, Jr.,* for appellant.
*A. Wallace Cato, District Attorney, Smith, Geer, Brimberry & Kaplan, Peter Zack Geer, L. Earl Jones, Arthur K. Bolton, Attorney General, John W. Dunsmore, Jr., Assistant Attorney General,* for appellee.