## 34747. ANGLIN v. THE STATE.

UNDERCOFLER, Presiding Justice.

John Thomas Anglin, Sr., was convicted by a jury on circumstantial evidence for the murders of Benjie Tygart and Johnny Luke on May 22, 1977, in Atkinson County.[1] He was sentenced to life inprisonment. He appeals.

---

[1]This is a companion case to Case No. 34746 in which John Thomas Anglin, Jr., appeals his conviction and life sentence for the murder of these victims. The father and son were indicted in a special presentment issued October 31, 1977. A severance was granted. Anglin, Jr., was tried first and convicted. Anglin, Sr.'s case was transferred to Cook County upon motion for change in venue (pre-trial

He challenges the sufficiency of the evidence to support the verdict. He assigns error on the admission of evidence of certain acts and declarations of the alleged co-conspirator, John Thomas Anglin, Jr., because a prima facie case of conspiracy was never established. He contends also the court's charge on conspiracy did not conform to the statute. Code Ann. § 38-306. We affirm.

1. The evidence was sufficient to support the verdict. The state produced some 60 witnesses to show that Anglin, Sr., and his son, Anglin, Jr., conspired to obtain large amounts of insurance,[2] by various means, insuring the life of the younger Anglin; that the purpose of the scheme was to pay off a loan against the Anglin farm and other debts; that a young man closely resembling Anglin, Jr., Benjamin Harry Tygart, was lured to the barn-residence occupied by Anglin, Jr., and shot to death; that the barn-residence was padlocked and set on fire with gasoline in order to burn the body beyond recognition and create the belief that Anglin, Jr., had died in the blaze. The state produced evidence also to show that Johnny Luke, who was present, was murdered also and his body dumped into a nearby swamp. In furtherance of the scheme, the evidence showed Anglin, Jr., fled the state in a green Plymouth Fury automobile, going first to Florida and thence to Katy, Texas, where he was later apprehended; following the murders and disappearance of Anglin, Jr., his father was authorized under Anglin, Jr.'s will to take custody of his body, cremate it and collect the life insurance proceeds, cash in savings accounts and other property assets amounting to $318,000.

---

publicity). The father's first trial ended in mistrial (hung jury). He moved to preclude the death penalty on retrial held June 13-17, 1977. Though not ruled upon, the state did not pursue the death penalty. Here he appeals denial of his motion for new trial and from the judgment of conviction.

[2]The record and transcript shows the following insurance estate established by Anglin, Jr., during the period from January, 1977, through May 22, 1977, the date of the murders: $169,000 in straight life insurance;

The evidence supporting Anglin, Sr.'s part in a conspiracy showed Anglin, Jr., executed a will in February, 1977, naming Anglin, Sr., as executor and primary beneficiary of his estate. Two witnesses testified when Anglin, Jr., purchased the green Plymouth Fury in Waycross, he was accompanied by a man described as Anglin, Sr., standing "5' 6" tall, pretty old, grey haired." The automobile was secretly registered in Berrien County and none of Anglin, Jr.'s closest friends were told about its existence. These witnesses testified they could not swear the man in the courtroom was the man who accompanied Anglin, Jr., but one of them stated he "fits the description I remember." Other evidence showed Anglin, Sr., had some prior knowledge of the contents of the will though he testified he had never read it; that Anglin, Sr., told the county coroner at the time of the fire, before there was positive identification of the torso found in the fire, that there was a will, that Anglin, Jr., wanted to be cremated and that he told the coroner he wanted the body carried to Jacksonville and cremated, though Anglin, Sr., denied saying this. The coroner also testified, and Anglin, Sr., admitted on cross examination, that he told the coroner ". . . be sure and fill out the death certificate with black ink as it would make good copies." He also stated ". . .wanted some you could collect on." The state also produced evidence that Anglin, Sr., was present when Anglin, Jr., applied for a $150,000 term life insurance policy, that the application was explained to him, and that he was also present later when the agent delivered the policy. A state witness testified that he saw Anglin, Jr., making a telephone call from a highway telephone booth about 9:30 p.m. on May 22, 1977, and that he was accompanied by Benjie Tygart, though he could not see Johnny Luke. Anglin, Sr., confirmed this call was received at 9:30 p.m., that Anglin, Jr., asked him to bring the new Chrysler Cordoba over to the barn and that he did so promptly, did

$85,000 recoverable from savings accounts when credit life, taken out to cover a similar amount in bank loans, was paid; and $44,941 in personal property assets (automobiles, truck, farm tractor, and new furniture) purchased on time and covered by credit life insurance.

not see anybody else with Anglin, Jr., and that Anglin, Jr., drove him straight back to his residence, arriving around 10 p.m. The state's evidence showed Anglin, Jr., after apprehension in Texas, stated he shot Tygart and Luke between 9:30 and 10 p.m., that the distances from the barn-residence to Nashville, from the barn-residence to Anglin, Sr.'s residence, and the distance from the barn-residence to the spot where Johnny Luke's body was dumped were such that all of these activities could reasonably have been accomplished during the period Anglin, Sr., stated he had driven to the barn-residence and returned home and established he had time to participate in the murders and in the disposing of the body of Johnny Luke. Evidence was introduced to show Anglin, Sr., was seen washing out the back of Anglin, Jr.'s truck several days following the fire. Upon examination, dried blood, human flesh and a hair were found in the truck which matched that of Johnny Luke. Evidence was introduced to show Anglin, Sr., received a long-distance telephone call from Katy, Texas, where Anglin, Jr., was hiding. Anglin, Sr., acknowledged receiving the call, but denied knowing who made it.

Anglin, Sr., testifying in his own defense, denied he had read Anglin, Jr.'s will; denied he participated in any manner in the deaths of Tygart and Luke; stated the insurance agent was lying in testifying he was present when the large insurance policy was delivered, and denied he was present in Waycross to assist Anglin, Jr., in bringing back a green Plymouth Fury automobile and denied he knew of its existence. He also sought to show that he believed Anglin, Jr., had also been murdered and searched the farm pond near the barn looking for his body when the authorities would not do so.

We conclude the evidence introduced during the trial was sufficient to authorize the jury to convict appellant of conspiracy to murder the victims based upon circumstantial evidence and did not demand a verdict of acquittal as a matter of law. *Sutton v. State,* 237 Ga. 418, 419 (228 SE2d 815) (1976); *Harris v. State,* 236 Ga. 242, 244-245 (223 SE2d 643) (1976); *Smith v. State,* 56 Ga. App. 384, 387 (192 SE 647) (1937).

2. We also conclude it was not error to permit the

state to present evidence of the acts and declarations of the co-conspirator because a conspiracy is shown by the whole evidence. *Coleman v. State,* 141 Ga. 731 (82 SE 228) (1914); *Wortham v. State,* 184 Ga. 674 (192 SE 720) (1937); *Knight v. State,* 239 Ga. 594 (238 SE2d 390) (1977).

3. The court's charge on conspiracy was essentially that authorized by Code Ann. § 38-306 and was not erroneous as a matter of law. Further, the court charged the jury that they were not to consider the acts and declarations of the co-conspirator if they did not find first that a conspiracy existed.

*Judgment affirmed. All the Justices concur.*

SUBMITTED MARCH 30, 1979 — DECIDED MAY 31, 1979.

*Peter Zack Geer,* for appellant.

*Vickers Neugent, District Attorney, Jack Knight, Arthur K. Bolton, Attorney General, Nicholas G. Dumich, Staff Assistant Attorney General,* for appellee.

