## 35958. PAUL v. THE STATE.

MARSHALL, Justice.

The defendant appeals from his conviction of the murder of his two-month-old son, for which he received a life sentence. The sole basis for the appeal is the contended insufficiency of the evidence to support the verdict and

judgment.

The state's case was based upon circumstantial evidence substantially as follows. The appellant lived with his wife, his mother, and his three children, ages five, 16 months and two months (the victim). At approximately 11:30 p.m. on October 29, 1978, the wife and the mother went on an errand, leaving the appellant alone in the house with the three sleeping children, who were healthy except for the victim, who had a cold. When the two returned in only 15-20 minutes, they found the appellant holding the victim, screaming, "Oh, my Lord; Oh, my Lord, my baby's hurt!" When his wife noticed blood coming from the victim's nose, she grabbed the child and had a neighbor take him to the hospital, en route to which he died at approximately 12:55 a.m.

The appellant gave several inconsistent versions of the events at various times. He stated that the victim began to cry, and he took him out of his crib, which had the sliding railing in the raised position. One version was that he was tossing the baby up in the air then remembered nothing more until he woke up with himself and the child on the floor. Another version was that he had placed the infant on his 18 to 24-inch-high bed with a pillow beside him, gone to take a shower, and returned three different times to pick the baby up off the floor and put him back on the bed after having heard him hit the floor. Another version was that when he was tossing the baby up in the air he slipped through his wet hands and fell to the floor. On another occasion, he stated that when he dropped the baby, his head hit the crib and then the floor. Yet another version was that, on the way to tend to the baby, the appellant hit his own head on a cotton toy hanging on a spring in the bathroom doorway, and remembered nothing thereafter. Finally, he claimed that they had the wrong person in jail and that an unidentified "she" had done it.

When the coroner told the appellant that the tentative diagnosis of the cause of death was "crib death," the appellant jumped up, went around the desk, put his arms around him, and exclaimed, "Thank you, I appreciate it!" An autopsy revealed, in addition to several small bruises on the upper abdomen, a four by five-inch

hematoma (bruise) and skull fracture above the left ear, which was the cause of death. A state medical examiner testified via hypothetical questions that the fatal injury could not have occurred in any of the ways the appellant had attempted to explain it, and not even if the infant had been dropped from the eight-foot ceiling. He testified that the skull of a child of this age is very flexible; that he had not seen this type of damage to such a child even in violent vehicular accidents; and that this type of injury must have been caused by the force of a deliberate and direct karate-type blow to the head by an assailant.

There was an attempt by the defense to raise an inference that the appellant, an epileptic, had accidentally caused the death during a seizure or fit. However, the evidence showed that, whenever he has seizures, he merely falls unconscious to the floor, is not violent, is disoriented and pale with dilated pupils for an hour or longer afterward. The coroner testified that, in his opinion, the appellant had not had a seizure recently. Moreover, the medical examiner's testimony ruled out any type of fall as a possible cause of the fatal injury. Although the medical examiner estimated the likely time of the injury as sometime prior to 9 p.m. and within 24 hours of death, he admitted that his method of estimation — based upon the growth rate of scar tissue, which varies with age and from person to person — is not dependable or exact, and that it is "very possible" that the injury could have occurred around 11:30 p.m., when the appellant was alone with the children.

The evidence adduced, though circumstantial, authorized the jury to find that the appellant — a functional illiterate with little schooling and "slow" mentally — when confronted with a sick, crying baby, delivered the fatal blow to the child in an angry outburst of explosive temper (which he displayed twice during the course of the trial). Neither the evidence nor the appellant has shown a *reasonable* hypothesis other than the guilt of the appellant (Code Ann. § 38-109), which is primarily a question for determination by the jury. *Harris v. State,* 236 Ga. 242 (1) (223 SE2d 643) (1976).

In conclusion, we find that the evidence presented was sufficient to convince a rational trier of fact of the

guilt of the appellant beyond a reasonable doubt. See Jackson v. Virginia, —— U. S. —— (99 SC 2781, 61 LE2d 560) (1979).

*Judgment affirmed. All the Justices concur.*

SUBMITTED FEBRUARY 15, 1980 — DECIDED MARCH 18, 1980.

*William L. Kirby, II,* for appellant.
*William J. Smith, District Attorney, Arthur K. Bolton, Attorney General, Mary Beth Westmoreland, Staff Assistant Attorney General,* for appellee.