## 61495. TOOKES et al. v. THE STATE.

POPE, Judge.

Douglas Tookes brings this appeal from his conviction of conspiracy and attempt to violate the Georgia Controlled Substances Act, Code Ann. § 79A-812. Appellant was sentenced to 20 years because of his participation in a scheme to sell heroin and cocaine by appointment to people who would call by telephone to arrange a drug purchase.

1. Pursuant to the investigation a wiretap warrant and extension were issued on two telephones located in a house at 261 Elm Street, N. W., Atlanta, Georgia. Appellant argues that the information furnished as a basis for obtaining the warrant was not sufficient to establish probable cause and, therefore, the trial court erred in failing to suppress the recordings of conversations intercepted by use of the wiretaps. Probable cause is required for the invasion of a citizen's privacy by authority of a wiretap warrant. Code Ann. § 26-3004. "This standard of probable cause is the same as the standard for a regular search warrant." United States v. Fury, 554 F2d 522, 530 (2 Cir. 1977), cert. den. 433 U. S. 910.

The affidavit of an Atlanta police officer which was contained in the application for the warrant indicated that information had been received from a confidential informant regarding the drug operation. Appellant urges that the affidavit contained merely the conclusions of the informant concerning the illegal activity and did not specifically indicate how the informant had reached those conclusions and, therefore, was invalid as a basis to establish probable cause under the standards set forth in Aguilar v. Texas, 378

U. S. 108 (84 SC 1509, 12 LE2d 723) (1964) and Spinelli v. United States, 393 U. S. 410 (89 SC 584, 21 LE2d 637) (1969).

The reliability of the informant was established by the police officer's sworn statement that he had known the informant for 13 years and that the officer and other members of the narcotics squad had received and acted upon information provided by the informant in the past which had proved reliable in making arrests for drug violations. Also, sufficient basis for the informant's knowledge in the present case was indicated by the fact that the informant worked closely with the police in making a controlled purchase of narcotics. Compare State v. Gamage, 340 A2d 1, 16 (Maine 1975). The informant had told the officers that a drug trafficking operation was being run out of a house located at 261 Elm Street in Atlanta. The operators whom he named would not deal directly with drug buyers but would sell through "runners" who would place a telephone call to a particular number on the telephone at the house to set up a drug deal. The runner would then go to the house, pick up the drugs and deliver them to the customers who had to park out of sight of the house in order to be served. The informant, working with police detectives, contacted a runner. On each of three occasions the runner placed a telephone call and then walked to the Elm Street address and returned with heroin. This information was quite detailed and any risk of falsehood of the informant's story was sufficiently diminished by the police corroboration which in the present case was sufficient to establish probable cause. Accord, Draper v. United States, 358 U. S. 307 (79 SC 329, 3 LE2d 327) (1959). Therefore, an extended evaluation of the underlying circumstances supporting informant's conclusions as to illegal activity was unnecessary because the subsequent corroboration lended credence to the informant's information. Further, the dates upon which the informant and officers had made the purchases were entered in the affidavit showing that the information was current and not stale. *Morrow v. State,* 147 Ga. App. 395 (249 SE2d 110) (1978).

2. The appellant contends the trial court erred in denying his motion to suppress wiretap evidence because of the failure of the monitoring officers to minimize interception and recordation of private conversations as required in accordance with the provisions of the warrant. As this court noted in *Morrow v. State,* 147 Ga. App. 395, 407, supra, " 'The proper approach for evaluating compliance with the minimization requirement . . . is objectively to assess the agent's or officer's actions in light of the facts and circumstances confronting him at the time without regard to his underlying intent or motive.' " In the instant case eight officers monitored both telephones over the forty-day period authorized by the warrants. Two

of the officers were sergeants in charge of supervising the operation. They instructed the other officers to record only drug-related calls and to minimize their interception of impertinent or personal calls.

Tape recorders were set up for each telephone and a visual meter was activated when a call was received on that particular line. The officers upon seeing the meter register would turn on the recorders and turn up the volume of the monitors in order to listen to the conversation to determine if the call related to the illegal drug operation. If the call was drug-related, the officers would continue to record it. If not, they would turn off the recorder and turn down the volume on the monitor so they could not hear the conversation.

During the execution of the warrant it was determined by the officers that the telephones had a call forwarding capability whereby a call placed to one telephone would be automatically transferred to the other line. The telephones also had a feature that notified the person in the house of other incoming calls. An audible "click" indicated that someone else had dialed the number or had been forwarded to that number from the other line. This system allowed the callers on the line to be put on hold so that other callers could be spoken to without the previous caller having to hang up. The visual meter on the wiretapping equipment did not indicate when this subsequent call would come in on a single line; therefore, after the officers determined the special capabilities of the system, they monitored the telephone calls in order to receive subsequent calls. The officers would turn the volume down on their listening equipment if a call was not drug-related so that the content of the conversation was inaudible but loud enough so that they could hear the tone indicating the receipt of another call. We consider this procedure utilized by the officers acceptable to minimize the calls intercepted and therefore find this enumeration to be without merit.

3. The trial court allowed the playing of excerpts made by the district attorney of the original wiretap recordings. The originals contained approximately 1740 telephone calls on seven reel-to-reel tapes and nine cassette tapes. Appellant contends that these edited copies of the original tapes were not properly authenticated and should have been excluded from evidence.

In the present case the original tapes were shown to have been recorded on reel-to-reel and cassette tape recorders. Testimony indicated that officers were capable of operating the machines and that the tapes were authentic recordings of the intercepted telephone conversations and had not been altered. The chain of custody was satisfactorily explained and it was shown that the recorded testimony was obtained by a wiretap and was not coerced in any fashion. The only element lacking in order to provide a proper foundation allow-

ing presentation of the original recordings to the jury was the identification of the speakers. *Steve M. Solomon, Jr., Inc. v. Edgar,* 92 Ga. App. 207 (3) (88 SE2d 167) (1955). However, these original recordings were not played for the jury. Instead, the original tapes were tendered into evidence to support the authenticity of the edited copies. The district attorney under oath testified that he made the edited copies and that these copies were accurate representations of the original recordings. The speakers whose voices were recorded on these edited copies were identified to the jury at the time the edited tapes were played. For this reason we deem that the foundation was proper for the admission of the original recordings and that the playing of the edited tapes in order to aid the presentation of evidence to the jury was not error. Moreover, the original tapes were provided to appellant's counsel prior to trial and, having been introduced into evidence, were available so that the accuracy of the edited tapes could have been checked; they were also available for cross examination purposes. Compare *Bible v. Somers Construction Co.,* 197 Ga. 761 (30 SE2d 623) (1944). The tapes were properly admitted and not subject to exclusion for any of the reasons enumerated by appellant.

4. Appellant contends that the indictment joined the two separate and distinct offenses of conspiracy and attempt and is therefore defective. The wording of the indictment charged the accused with the offense of violating the provisions of the "Georgia Controlled Substances Act 79A-812 (Attempt and Conspiracy)." The fact that the words "attempt" and "conspiracy" were included in the indictment set off by parenthesis did not constitute the charging of two separate offenses. These words merely identified by title that particular code section. From the plain wording of the indictment, which stated that the appellant and others "did conspire" to commit certain unlawful acts, it is clear that appellant was charged only with the offense of conspiracy.

5. The denial of appellant's motion for severance of his trial from the co-conspirators was not error. In order to mandate the severance of trials it must be demonstrated that harm resulted from the failure to sever. *Price v. State,* 155 Ga. App. 206 (1) (270 SE2d 203) (1980). Appellant argues that he was unable to cross examine his co-conspirator, who refused to take the stand, in order to attempt to prove by her testimony that his was not the voice which officers identified on the wiretap recordings as talking to the co-conspirators and talking on the telephone at the Elm Street house where the co-conspirator lived. However, because this co-conspirator did not testify, there was no greater possibility of harm resulting here, where appellant could not cross examine her, than would have resulted if

separate trials had been held and the co-conspirator had invoked her Fifth Amendment right by refusing to testify. The other two defendants who did testify, as did appellant, denied all participation by appellant which was consistent with his defense.

6. Appellant claims that since the informant participated in the instant case, he was a decoy and his identity should have been revealed. The informant did work with police when they made three drug purchases while attempting to verify the information he had given them. However, the informant's participation ended there. There is no indication that he was a participant or witnessed any activities of the crime of conspiracy other than the act of a co-conspirator selling drugs. This is the only activity to which his testimony would have been admissible. The appellant does not specifically indicate why disclosure of the informant's identity would benefit him. "Where the disclosure of the informant's identity would at most serve only to furnish possible testimony impeaching the officer's testimony, disclosure of the informant's identity is not required." *Black v. State,* 154 Ga. App. 441, 442 (268. SE2d 724) (1980); *Paras v. State,* 247 Ga. 75 (3) (274 SE2d 451) (1981).

7. The corporate charter indicating appellant's address as 261 Elm Street in 1975 was admissible to contradict his statement that he had had no connection with that address since 1968 or 1969. Code Ann. § 38-1803.

8. Appellant's next enumeration concerns the sufficiency of the evidence concerning his participation in the crime. "Conspiracy consists in a corrupt agreement between two or more persons to do an unlawful act, the existence of which agreement may be established by direct proof, or by inference, as a deduction from acts and conduct, which discloses a common design on their part to act together for the accomplishment of the unlawful purpose." *Fincher v. State,* 211 Ga. 89 (4) (84 SE2d 76) (1954). "It is . . .necessary that the identity and participation of appellant be established by corroboration independent of the accomplice's testimony. . . . 'Slight evidence from an extraneous source identifying the accused as a participator in the criminal act will be sufficient corroboration of the accomplice to support a verdict.' " *Horn v. State,* 140 Ga. App. 592, 594 (231 SE2d 414) (1976).

There was independent corroborating evidence in the present case that officers observed the premises and made various drug purchases. The appellant was seen at the location and recorded statements indicated that he conducted drug transfers over the telephone located at the Elm Street address. The recording also indicated that he had discussed various aspects of the operation with his co-conspirators. This sufficiently connected him with the illegal

operation so as to establish an inference of his involvement in the conspiracy.

Appellant also argues that evidence by the co-conspirators in regard to him should have been ruled out. He contends that the state did not show a prima facie case of conspiracy involving him before such evidence was admitted. We conclude this was not error because a conspiracy is shown by the evidence as a whole. *Anglin v. State,* 243 Ga. 720 (2) (256 SE2d 455) (1979). We therefore conclude from an examination of the record that the evidence was sufficient for a rational trier of fact to have found appellant guilty beyond a reasonable doubt. *Smith v. State,* 154 Ga. App. 497 (2) (268 SE2d 714) (1980).

9. Appellant finally enumerates that a juror became concerned about the attendance of a spectator at the trial. The juror recognized the spectator and knew him to be involved in illicit drugs. According to a bailiff who was examined under oath subsequent to the trial, the juror expressed concern to the bailiff that the judge should be informed of these facts since the spectator's participation in the trial might affect his impartiality. The bailiff relayed the information to the judge who told the bailiff to have the juror write a note to the judge. The exact contents of the note, which were entered into the record of the case, were apparently not disclosed to counsel for the state or appellant; however, both were called to the judge's office and informed by the judge that the juror had expressed his concern about the spectator. Both counsel informed the judge that the spectator was not a witness in the case, and the juror was so informed by the bailiff. We are not persuaded that the judge abused his discretion at the time of the trial by taking no further action or subsequent to the conviction by refusing to have a full hearing on the matter at defense counsel's request. Compare United States v. Burke, 496 F2d 373 (5 Cir. 1974).

*Judgment affirmed. Quillian, C. J., and McMurray, P. J., concur.*

DECIDED JULY 15, 1981 —
REHEARINGS DENIED JULY 31, 1981 

*J. Melvin England,* for appellant.

*Lewis R. Slaton, District Attorney, Benjamin H. Oehlert III, Joseph J. Drolet, Assistant District Attorneys,* for appellee.