### 40876. LOWE v. THE STATE.
(319 SE2d 834)

CLARKE, Justice.

The appellant was indicted and convicted of the murder of her husband, Gary Lowe. She received a sentence of life imprisonment. In this appeal she enumerates error on the failure of the court to grant a mistrial based on improper comments on her failure to testify and on the admission of testimony to bolster the trial statements of the state's primary witness, Michael Carver.

The body of Gary Lowe was discovered on May 29, 1982. The cause of death was a gunshot wound to the head from a mini-.14 rifle. There were also several small caliber bullet wounds in the head and neck area.

The state's evidence revealed that appellant had been having an affair with Michael Carver since 1981. Investigation of the homicide led to the arrest of Carver who pled guilty to murder and received a life sentence. He implicated the appellant and his roommate, Scott Hanline who had fled and had not been apprehended at the time of trial.

Carver testified that appellant wanted him to kill her husband and offered to pay him from the proceeds of a $35,000 life insurance policy. The possibilities were discussed on several occasions and Carver agreed to find someone to kill Mr. Lowe. Hanline had been present during some of these conversations and he agreed to murder Lowe for $2,500.

On the evening of May 28, 1982, Carver phoned Lowe for assistance with his car. When Lowe arrived, Hanline, who Lowe did not know, approached the two men armed with a pistol. He ordered them into Carver's car and they drove around for approximately two hours. Hanline then instructed them to get out of the car and lie face down;

he then proceeded to shoot Lowe with the pistol and then a rifle belonging to Carver. Carver testified that during the staged robbery he acted the part of a victim so that Lowe would not suspect his part in the scheme in case something went wrong and Lowe did not die.

Carver called the appellant between 6:30 and 7:00 on the morning of May 29 to inform her Lowe was dead but she told him someone was there and she could not talk. A neighbor of the appellant's testified she was with the appellant when the phone rang and heard Mrs. Lowe tell the caller that she could not talk. This witness also testified that Carver was at the appellant's home the day after the murder and that she had seen him there on other occasions. Another witness, Tony Elmore, testified that he also heard Mrs. Lowe discussing how to murder her husband.

1. The defense presented no evidence and the appellant did not testify. It is contended that the trial court erred in overruling a motion for mistrial during the closing argument for the state. The arguments for both sides dealt at length with the issue of credibility of the witnesses and of Michael Carver in particular. The prosecutor made the following statement: "No witness, no witness, not Elmore, not Carver, was ever cross-examined on the real issue in this case and that is did she make those statements? There is no evidence in this case to refute or contradict that she in fact made those statements. . . . Is there any evidence, any evidence, anybody to say no, that she didn't make them?"

After the motion for mistrial was denied, the prosecutor concluded: "The defense has produced no evidence in this case to rebut the testimony offered and the evidence offered by the state. And what you must do is determine and decide this case on the evidence."

Appellant contends this language was an impermissible comment on her failure to take the stand and testify under *Marlow v. State*, 152 Ga. App. 218 (262 SE2d 460) (1979) and *Spann v. State*, 126 Ga. App. 370 (190 SE2d 924) (1972). She argues that the only reasonable interpretation is that the statements must be true because she did not take the stand to deny them.

The state contends this was proper argument on the failure of the defense to rebut the state's evidence or successfully attack the credibility of Carver on the relevant facts. See *Smith v. State*, 245 Ga. 205 (264 SE2d 15) (1980); *Bryant v. State*, 146 Ga. App. 43 (245 SE2d 333) (1978).

In *Ranger v. State*, 249 Ga. 315 (290 SE2d 63) (1982), we applied the two-prong test set forth in United States v. Rochan, 563 F2d 1246 (5th Cir. 1977). Under the test, reversal for improper prosecutorial conduct requires a finding that (1) "the prosecutor's manifest intention was to comment upon the accused's failure to testify" or (2) the comment was "of such a character that the jury would naturally and

necessarily take it to be a comment on the failure of the accused to testify." *Ranger*, supra at 319.

In *Ranger*, the prosecutor remarked "the defense has put forward no explanation of any accident." As in this case, the defendant argued that since he was the only possible eyewitness present at the killing, the prosecutor's argument was necessarily a comment on his failure to testify. We held the statement was proper argument under the above-stated test.

We find that the argument in this case was not one that must necessarily and naturally be construed as a comment on the failure of the appellant to testify. In the context of the prosecutor's argument it was not improper to argue that the defense did not present evidence to refute the state's case or to rebut the veracity of the state's witnesses.

2. Appellant contends it was error to allow Larry Williams to testify as to statements made to him by Carver while they were both inmates in the Liberty County jail on the grounds that a prior consistent statement may not be used to bolster in-court testimony of a witness. *Smith v. State*, 200 Ga. 188 (36 SE2d 350) (1945); *Stephens v. State*, 156 Ga. App. 859 (275 SE2d 758) (1980). While prior consistent out-of-court statements are not admissible merely to bolster in-court testimony, such statements are admissible where the opposing party attempts to show that the in-court testimony is fabricated to gain some benefit or leniency from the state in the form of sentencing or parole considerations. *Mullins v. State*, 147 Ga. App. 337 (248 SE2d 706) (1978); see 75 ALR2d 909, § 23.

Carver was arrested and charged with murder on June 2, 1982. He entered a plea of guilty and received a life sentence in January of 1983; at the time of his plea he gave a complete accounting of the murder which he also testified to at trial. During cross-examination of Carver defense counsel accused him of fabricating the story while incarcerated and of implicating Mrs. Lowe to show that he was not really responsible in hopes of gaining favor with the Board of Pardons and Paroles.

Following Carver's testimony the state called Larry Williams to the stand. He was in the adjoining cell of Carver in June of 1982. Williams testified that Carver told him that he and his roommate, who was the triggerman, killed the husband of a woman he was having an affair with and were to be paid money from life insurance proceeds. Williams reported this conversation to law enforcement authorities on June 18, 1982. This information led to the arrest of appellant and issuance of a warrant for Hanline.

The trial court instructed the jury that the testimony concerning Carver's statement while in jail was admitted only for the purpose of showing whether or not it was made and was not to be considered on

the truth of the facts in the statement. Where the defense imputes recent fabrication to a witness we hold there was no error in allowing the statement made six months before his guilty plea and over a year prior to trial for the limited purpose of showing the statement was made. Both Carver and Williams were cross-examined by the defense concerning whether the statement was made. We find no error.

*Judgment affirmed. All the Justices concur, except Smith, J., who dissents as to Division 1 and the judgment.*

DECIDED SEPTEMBER 5, 1984 —
REHEARING DENIED SEPTEMBER 26, 1984.

*Ashman & Zipperer, Alex L. Zipperer, Arthur L. Cooper,* for appellant.

*Dupont K. Cheney, District Attorney, Michael J. Bowers, Attorney General, Eddie Snelling, Jr.,* for appellee.