70143. BEAL v. THE STATE.
70144. COCHRAN v. THE STATE.
70145. BAINES v. THE STATE.
(333 SE2d 103)

CARLEY, Judge.

Appellants were tried together before a jury on multi-count indictments. Appellant Beal was found guilty of two counts of theft by receiving stolen property, to wit: one 1981 white Chevrolet Corvette and one 1980 claret Chevrolet Corvette; bribery; and possession of a firearm during the commission of a crime. Appellant Baines was found guilty of one count of theft by receiving stolen property, to wit: a 1980 claret Chevrolet Corvette. The jury returned a guilty verdict against appellant Cochran for the offenses of theft by receiving stolen property, to wit: one 1981 white Chevrolet Corvette; bribery; and, possession of a firearm during the commission of a crime. Appellants appeal from the judgments of conviction entered on the guilty verdicts. Their appeals are consolidated herein for the purpose of clarity.

1. Enumerated as error by all appellants is the denial of their motions to suppress evidence obtained pursuant to a wiretap placed on appellant Beal's telephone.

(a) Appellants' first enumeration concerns the undisputed fact that the warrant was issued by the same superior court judge who had previously notarized an affidavit which was submitted in support of the application for the investigative warrant. Appellants assert that, having notarized the affidavit, the judge was not neutral when he subsequently issued the warrant.

The determination of whether probable cause exists to issue a warrant must be made by a neutral and detached magistrate. This " 'requires severance and disengagement from activities of law enforcement.' [Cits.]" *Thomason v. State*, 148 Ga. App. 513, 514 (251 SE2d 598) (1978). However, a superior court judge is authorized generally to notarize affidavits. See OCGA § 15-6-9 (8). By doing so, the

judge merely establishes that the affiant "swore to and subscribed before him" the contents of the affidavit. We fail to see how this taints the judge's ability to weigh the credibility of the affiant and the facts and circumstances set forth in the affidavit under such oath. See OCGA § 16-11-64. Nor do we find that the act of notarizing affidavits constitutes engaging in activities of law enforcement. Compare *Thomason v. State*, supra at 514. The trial court did not err in denying appellants' motions to suppress on this ground. Cf. *Little v. State*, 157 Ga. App. 462 (2) (278 SE2d 17) (1981).

(b) All three appellants next argue that the affidavit submitted in support of the wiretap application failed to demonstrate probable cause. "Probable cause is required for the invasion of a citizen's privacy by authority of a wiretap warrant. [OCGA § 16-11-64]. 'This standard of probable cause is the same as the standard for a regular search warrant.' [Cit.]" *Tookes v. State*, 159 Ga. App. 423 (1) (283 SE2d 642) (1981). See also *Cox v. State*, 152 Ga. App. 453, 458 (263 SE2d 238) (1979).

The evidence shows that Georgia Bureau of Investigation (GBI) agent Johnson executed an affidavit setting forth his knowledge of a criminal operation involving the theft of motor vehicles. Agent Johnson's information was provided to him by "Informant A," as well as two named investigative police officers who, in turn, received their information from four more informants. Briefly summarized, the information contained in the affidavit was as follows: "Informant A" advised Johnson that appellant Beal and co-indictee Hambright were conducting an ongoing business whereby they stole Corvettes, cut them up, and placed on them valid motor vehicle identification (MVI) numbers obtained from wrecked Corvettes. Appellant Cochran was financing the business. Johnson stated in his affidavit that "Informant A" had provided reliable information in the past which had led to arrests, including the arrest of Hambright for a prior crime of which he was convicted. It was further stated that "Informant B" had given two named police investigators the same detailed information as provided by "Informant A." "Informant C" advised one of the two other officers that appellants Beal and Hambright were conducting a "chop shop" and that he had purchased a stolen vehicle from Hambright.

Johnson was told by "Informant D" that Hambright offered to pay him a certain sum for any stolen Corvette that he could deliver to appellant Beal or to Hambright. "Informant E" disclosed to one of the officers that appellant Beal was switching engines of stolen Corvettes with wrecked Corvettes and selling them, and that appellant Cochran furnished the money to appellant Beal. Moreover, "Informant E" personally knew of thirty-four vehicles that these men had "changed over" from October of 1980 to April of 1983. In June of 1983 "Informant E" also furnished three MVI stickers which he had

obtained personally from Corvettes brought to appellant Beal. These numbers were found to have been taken from three Corvettes which had been reported stolen. "Informant E" also advised the investigator of appellant Beal's address and garage phone number, and stated that appellant Beal used this number to order stolen Corvettes. Highly specific information concerning this ongoing criminal operation, particularly details of activities occurring within the prior months, was provided by "Informant E."

The information obtained from the informants, particularly that concerning telephone contacts by appellant Beal with out-of-state purchasers of stolen automobiles or providers of stolen parts, was corroborated by the police through the use of telephone company records. The affidavit stated that all five of the informants were known and had been reliable in the past.

Our review of the evidence reveals that the superior court judge had a substantial basis for concluding that probable cause existed to issue the warrant. *Illinois v. Gates,* 462 U. S. 213 (103 SC 2317, 76 LE2d 527) (1983). Accordingly, it was not error to deny appellants' motions to suppress the evidence on the ground that there was no probable cause. See generally *Tookes v. State,* supra at 423 (1); *Cox v. State,* supra; *Little v. State,* supra.

(c) Appellants finally attack the validity of the warrant on the ground the application failed to set forth facts and circumstances which supported the necessity of resorting to the wiretap. See *Lawson v. State,* 236 Ga. 770 (1) (225 SE2d 258) (1976). However, we find that the affidavit shows that appellant Beal's telephone was used to communicate with others involved in the theft of motor vehicles, as well as to order and deliver stolen vehicles and components. The affidavit further showed that when a search warrant had been previously executed on May 3, 1983 at appellant Beal's business, no identifiable evidence of criminal activity was obtained. This was because, as "Informant E" advised, stolen vehicles were not taken to appellant Beal's garage until the identifying numbers on the stolen vehicles were changed. Moreover, it would take only five hours to complete the change over of a stolen vehicle and to destroy all identifying numbers. Finally, it was shown that numerous attempts had been made to conduct physical surveillance, but the proximity of the residences in the neighborhood and the terrain made such surveillance ineffective. Moreover, appellant Beal owned the building across the street, which made detection of physical surveillance almost certain. Accordingly, we find that the issuing judge was shown the difficulties involved in the use of conventional investigative techniques and that such techniques would not suffice to expose the crime. *Lawson v. State,* supra; *Romano v. State,* 162 Ga. App. 816, 819 (1) (b) (292 SE2d 533) (1982); *Wireman v. State,* 163 Ga. App. 439, 442 (3) (295 SE2d 530)

(1982).

2. Appellants Cochran and Baines enumerate as error the denial of their motions to sever the trial of the charges brought against them from the trial of the charges brought against appellant Beal. They assert that the substantial amount of evidence against Beal "spilled over" to them, causing guilt by association. The evidence shows that Beal was the primary operator of the "chop shop." Insofar as the charges against appellant Cochran are concerned, the evidence shows that he and appellant Beal went to Cleveland and purchased a burned chassis. Cochran rebuilt the engine and prepared the chassis for the installation of a body. Appellants Cochran and Beal called one Vaughn and requested that he obtain a white Corvette. Once a 1981 white Chevrolet Corvette was delivered to the garage, Beal and Cochran disassembled the body, removed the MVI stickers, and placed it on the salvaged chassis. This rebuilt 1981 white Corvette was subsequently seized from Cochran. The evidence adduced at trial concerning appellant Baines was as follows: Baines informed appellant Beal that his ex-wife wanted a late model Corvette and asked Beal if he could get one for him. A few days later, Vaughn delivered to the garage a stolen 1980 claret Corvette. Appellant Baines was present while appellant Beal "changed out" the car. Appellant Baines' ex-wife testified that she purchased the Corvette from appellant Baines.

"We find no abuse of discretion under the criteria set out in *Cain v. State*, 235 Ga. 128 (218 SE2d 856) (1975), and *Orkin v. State*, 236 Ga. 176, 193 (223 SE2d 61) (1976), where a conspiracy is shown, where the defenses of the co-defendants being tried are not antagonistic, and where, as here, the jury is carefully instructed on conspiracy and to consider the [S]tate's case against each defendant separately." *Kesler v. State*, 249 Ga. 462, 469 (291 SE2d 497) (1982). The trial court did not err in denying the motions of Cochran and Baines to sever.

3. Appellants Beal and Cochran enumerate as error the admission into evidence of certain testimony of co-conspirator Curtis. In presenting its case as to the bribery charge against appellants Beal and Cochran, the State called as a witness Deputy Lewallen. Lewallen was allowed to testify as to a conversation he had conducted with Robert Curtis, an alleged co-conspirator who was not a co-defendant. The crux of the conversation was that Curtis would pay Lewallen for any information the officer could provide concerning the investigation of appellants Beal and Cochran. Appellants concede that under OCGA § 24-3-5, the declaration of a co-conspirator during the pendency of a criminal project is admissible against all co-conspirators *after* the fact of conspiracy is proved. However, appellants assert that there was no evidence to establish any conspiracy between themselves

and Curtis. Our review of the record reveals that, considering the entirety of the evidence presented at trial, a prima facie case of conspiracy was shown. Numerous wiretap tapes were played at trial wherein conversations were conducted between Curtis and appellant Beal concerning their plan to obtain the information, and during which they implicate appellant Cochran. The evidence was sufficient to establish a conspiracy by Curtis and appellants Beal and Cochran to bribe a police officer. See generally *Timberlake v. State*, 158 Ga. App. 125, 127 (2) (279 SE2d 283) (1981); *Castell v. State*, 250 Ga. 776, 778 (1) (a) (301 SE2d 234) (1983). Therefore, the declarations of Curtis were admissible against Beal and Cochran. OCGA § 24-3-5.

4. Also enumerated as error by appellants Beal and Cochran is the denial of their respective motions for directed verdict of acquittal as to the single count against each for possession of a firearm during the commission of a crime. See OCGA § 16-11-106. The evidence concerning these offenses was that co-conspirator Curtis arranged to meet Detective Lewallen for the purpose of exchanging investigatory information for money. Curtis arrived at the pre-arranged scene in a gray van, which he exited prior to the exchange. It is undisputed that Detective Lewallen was advised by Curtis that there were others in the van, but that Lewallen did not see anyone other than Curtis in the van, nor did he see a firearm at any time. After obtaining the money, Lewallen left the scene. Immediately following the exchange and as the van was leaving the scene, it was stopped by police, who had been informed that the payment to Lewallen had taken place. Curtis had been driving, a female was on the passenger side, and appellants Beal and Cochran were in the rear portion of the van. Found in the van were three pistols. Specifically, one revolver was found between the front bucket seats, another in the floorboard of the rear of the van, and the third was lying on the rear seat. A police officer testified at trial that one of the revolvers belonged to appellant Beal.

As we have held in Division 3, the evidence was sufficient to establish a conspiracy by Curtis and appellants Beal and Cochran to bribe a police officer. The evidence showed that Curtis actually made the arrangements and exchanged money for information with the police officer, while Beal and Cochran waited in the van. Thus, it is clear that any act committed by Curtis in furtherance of the conspiracy to bribe the police officer would, in legal contemplation, be deemed to be the acts of appellants Beal and Cochran. See *Ford v. State*, 163 Ga. App. 745 (296 SE2d 85) (1982). In other words, Curtis' possession on *his* person of a firearm during the commission of the crime would have been deemed an act by Beal and Cochran as well. See *Roberts v. State*, 167 Ga. App. 38 (1) (306 SE2d 43) (1983). However, there is no evidence that Curtis had a firearm on his person during the commission of the bribery. Evidence that, following the commission of the

crime, a pistol was found in the van near where Curtis was seated, is not sufficient, standing alone, to support a finding that Curtis had a firearm on his person during the actual commission of the bribery. Compare *Teague v. State*, 165 Ga. App. 470 (1) (301 SE2d 667) (1983) (wherein the gun was not in the vehicle during the commission of the crime, but immediately upon appellant's return from the commission of the crime, appellant's gun, was found in the glove compartment of the vehicle). Nor do we find the mere fact that two revolvers were discovered in the rear of the van following the bribery sufficient evidence to support appellants' conviction of the crimes charged. While this evidence may have been sufficient to enable a jury to infer that appellants had "possession" of the weapons at the time of their arrest, see *Miller v. State*, 165 Ga. App. 638, 640 (3) (302 SE2d 394) (1983), it is insufficient to show that appellants had "on [their] person[s] a firearm . . . during the commission of . . . a felony. . . ." OCGA § 16-11-106 (a). Accordingly, the trial court erred in denying appellants Beal and Cochran's respective motions for directed verdict of acquittal as to the single count against each for possession of a firearm during the commission of a felony.

5. Appellant Beal enumerates as error the denial of his motion to sever the counts of the indictment charging him with the offenses of bribery and possession of a firearm during the commission of a crime. In light of our holding in Division 4, we need only address this enumeration insofar as it concerns the charge of bribery. The charge of bribery was based upon a conspiracy by co-indictee Curtis and appellants Beal and Cochran to obtain investigative information concerning the other offenses for which the men were charged.

Offenses may be "joined for trial when they are based (1) 'on the same conduct' or (2) 'on a series of acts connected together' or (3) on a series of acts 'constituting parts of a single scheme or plan.' [Cit.] If offenses are joined for any of these three reasons, the defendant does not have an automatic right of severance; instead, the trial judge may grant severance if it is necessary 'to achieve a fair determination of the defendant's guilt or innocence of each offense.' [Cit.]" *Haisman v. State*, 242 Ga. 896, 900 (252 SE2d 397) (1979). See also *Cooper v. State*, 253 Ga. 736, 737 (3) (325 SE2d 137) (1985).

We find that the offense of bribery was properly joined for trial with the remaining offenses as all of the offenses were based on a series of acts constituting parts of a single scheme or plan. The bribery offense arose from attempts made by appellants Cochran and Beal to obtain investigative information concerning the other offenses for which they stood trial. The purpose of all of the crimes, with which appellant Beal was charged, was the continued operation of the "chop shop." The trial court did not abuse its discretion in denying appellant Beal's motion to sever the bribery count from the trial of the case

on the other counts.

6. During the trial, appellant Beal's former wife, Ms. Couch, testified as a State's witness. During her testimony, she admitted that it was her responsibility in the "chop shop" organization to remove the stickers from the doors of the stolen vehicles when they were brought to the shop to be "changed over." Because Ms. Couch feared Beal, she secretly kept the MVI stickers and a record of the stolen vehicles brought into the shop. One such record was admitted into evidence as State's Exhibit No. 10, which was a piece of notebook paper containing a MVI sticker with certain notations. Ms. Couch testified that the sticker was the one that she removed from the stolen 1981 white Corvette which was changed over and sold to Cochran. She further testified that the vehicle was delivered to the shop on February 24, 1982. The MVI sticker and notes were recorded by Ms. Couch the day that the stolen 1981 Corvette was delivered. As subsequent cars came into the shop, Ms. Couch placed the MVI stickers from those cars on the same page and on different pages of a notebook. On cross-examination, Ms. Couch admitted that the top portion of the notebook paper had been cut off at a line she had previously drawn on the paper, but that it had been GBI agent Johnson, not Ms. Couch, who had cut the paper. Agent Johnson later testified that the top portion of the exhibit contained another MVI sticker taken from another car which was not a subject of the instant case. He had cut the paper to avoid any prejudice to appellants that might occur when the paper was admitted into evidence.

Appellant Cochran maintains that the alteration of the exhibit violated his rights under *Brady v. Maryland*, 373 U. S. 83 (83 SC 1194, 10 LE2d 215) (1963). He contends that the omitted portion of the exhibit was exculpatory in that it contained writings which appear to have been made with the same writing instrument by the same person at the same time, thus refuting Ms. Couch's testimony that she had applied the MVI stickers to the papers at different times and as the vehicles were brought into the shop.

However, the record reveals that the top portion of Exhibit No. 10 was made available to Cochran during trial, and was even admitted into evidence. The trial court allowed appellant Cochran to cross-examine Ms. Couch concerning the order of her attachment of the stickers, and the writing instrument used. Agent Johnson was also cross-examined as to his reasons for "tampering" with the exhibit. " '. . . Brady is not violated when the Brady material is available to defendants during trial. [Cits.]' [Cit.] 'Brady does not require *pre-trial* disclosure of the materials.' [Cit.] . . . Earlier disclosure would not have benefited the defense, and the delayed disclosure did not deprive him of a fair trial. [Cit.]" *Castell v. State*, supra at 781.

7. Appellant Cochran enumerates as error the trial court's charge

on the law of conspiracy. Contrary to appellant's assertion, "even if conspiracy is not alleged in an indictment, a charge upon the subject is not error if the evidence tends to show a conspiracy. [Cits.] The evidence in this case was sufficient to justify a charge on conspiracy." *Alexander v. State*, 150 Ga. App. 41, 42 (1) (256 SE2d 649) (1979). Moreover, we find that, viewed in its entirety, the trial court's charge was a correct statement of the law and the parties' contentions in the case. See *Johnson v. State*, 170 Ga. App. 71, 72 (4) (316 SE2d 160) (1984).

8. Finally, appellant Baines asserts that the trial court erred in sentencing him as a felon under OCGA § 16-8-12 (a) (4) (A), as there was no evidence that he received a stolen motor vehicle, but only evidence that he received component parts concerning which there was no evidence of value. See OCGA §§ 16-8-12 (a) (4) (A); 16-8-7. The evidence adduced at trial was that appellant Baines approached appellant Cochran concerning his desire for a late model Corvette for his ex-wife, and asked Cochran if he could obtain such an automobile. Cochran indicated that he could do so and contacted Vaughn. A couple of days later, Vaughn delivered a 1980 claret Corvette, and Baines was notified. Appellant Baines went to the shop the following day while Cochran was changing over the car, and, before the car was completed, told Cochran that he would purchase the car.

In view of the evidence that it was appellant Baines who requested that an automobile be stolen, that he had knowledge of the changing over of the automobile and was present for such, that he purchased the car before it was changed over, and that he was in possession of the vehicle once it was placed on a valid chassis, we find that the evidence was sufficient to authorize the sentencing of appellant Baines under the provisions of OCGA § 16-8-12 (a) (4) (A). See *Howington v. State*, 121 Ga. App. 715 (1) (175 SE2d 41) (1970).

9. Accordingly, in Case No. 70145, the judgment of conviction is affirmed. In Case Nos. 70143 and 70144, the judgments of conviction are affirmed, except for the convictions of possession of a firearm during the commission of a felony, which are reversed.

*Judgment affirmed in Case No. 70145. Judgments affirmed in part and reversed in part in Case Nos. 70143 and 70144. Birdsong, P. J., and Sognier, J., concur.*

DECIDED JUNE 7, 1985 —
REHEARING DENIED JUNE 25, 1985 — 

William W. Keith III, for appellant (case no. 70143).
Erwin Mitchell, Neil Wester, for appellant (case no. 70144).

*J. Raymond Bates, Jr.*, for appellant (case no. 70145).
*J. O. Partain III, District Attorney*, Steven M. Harrison, Assistant *District Attorney*, for appellee.