## 71454. CLINE v. THE STATE.
(343 SE2d 506)

McMURRAY, Presiding Judge.

Defendant Cline was indicted, along with David Lankford, for theft by receiving stolen property in that they did receive stolen "teetops" from a Corvette automobile. (Teetops are two symmetrical glass coverings used on automobiles which can be removed, making the automobile into a convertible.) Lankford entered a plea of guilty and was sentenced. On August 27, 1984, defendant Cline pleaded guilty, however, on September 20, 1984, he withdrew his guilty plea and entered a plea of not guilty. On September 25, 1984, defendant filed a motion to suppress, challenging the April 2, 1984, search of the house where he was living. This motion was denied. On November 28 and 29, 1984, defendant was tried in the Superior Court of Whitfield County; however, the jury was unable to reach a unanimous verdict and a mistrial was declared. The defendant was tried again on April 1, 2 and 3, 1985. The evidence adduced at the second trial, construed most favorable to support the verdict, showed that on April 1, 1984,

David Lankford, along with two other confederates, stole a set of glass teetops and an Escort radar detector from a 1981 Chevrolet Corvette owned by Leeanne Edwards. The right side (passenger) teetop was damaged during the theft when the crowbar Lankford used to pry open the car window slipped and cracked the teetop. Lankford traded the teetops to the defendant for a quantity of cocaine either late that night (April 1, 1984) or early the next morning.

On April 2, 1984, the day after the theft, Deputy Leevan Kirk, an investigator for the Murray County Sheriff's Department, observed a set of teetops which appeared to be identical to the teetops stolen by Lankford, at the home of Richard Nations, the defendant's half-brother. (The defendant was living with Nations at the time of the search. The search was conducted pursuant to a warrant issued in regard to an undercover drug investigation being conducted by the Murray County Sheriff's Department. Officer Kirk did not seize the teetops during this search.) David Lankford testified at trial that he saw the defendant with a bundle (which Lankford contended contained the covered up teetops) a day or so after the teetops were stolen, at the home of William and Betty Mae Reid, the defendant's aunt and uncle. William Reid testified that the defendant had placed the teetops in the bedroom of his (Reid's) home. On April 16, 1984, Investigator Bruce Jordan of the Dalton Police Department recovered the teetops from the Reid's house. From this and other evidence adduced at trial the jury found the defendant guilty. The defendant's motion for new trial was denied and he now appeals. *Held*:

1. In his first enumeration of error defendant contends that the trial court erred in failing to suppress the testimony of Deputy Leevan Kirk relating to the observations he made and the items he discovered (the teetops) during the search of Richard Nations' house because there was not sufficient probable cause for the issuance of the search warrant. The defendant argues that the "underlying facts in support of the application" before the issuing magistrate were so remote in time ("stale") that they did not create a reasonable belief that the same conditions existed at the time the warrant was issued.[1]

Upon making the application for the search warrant Deputy Kirk submitted an affidavit in support thereof describing a drug buy which took place at Richard Nations' house on January 29, 1984, slightly over two months prior to the date of application for the warrant. In resolving the question of whether there was probable cause to issue the search of Nations' house the magistrate was authorized to consider sworn oral testimony in addition to the contents of Deputy

---

[1] The "underlying facts in support of the application" upon which defendant Cline relies as supporting his contentions of "staleness" are found in the record of *Nations v. State*, 177 Ga. App. 801 (341 SE2d 802) (1986).

Kirk's affidavit. See *Simmons v. State*, 233 Ga. 429 (211 SE2d 725). See also *Shrader v. State*, 159 Ga. App. 522 (1), 523 (284 SE2d 37).

At the hearing on the motion to suppress Deputy Leevan Kirk testified he advised the magistrate "we had been watching this place for quite some time and had made more buys than just the one at Nations' residence." In response to the assistant district attorney's question: "Now, what time period did you testify to in regards to the Affidavit dated 1/29/84? Now, are you testifying that your investigation continued after that date?" Deputy Kirk responded: "Yes sir. Yes sir, it did." In response to the assistant district attorney's question: "Now, tell us exactly everything you told the Magistrate in regards to January 29th on 'til April 2nd?" Deputy Kirk responded: "Okay. I told him that I had several different informants coming to me and telling me that Mr. Nations was still dealing. I told him that — the day that I wanted to get a warrant, I told him I understood there was a party there a night or two before that. Also, about the drug traffic — the traffic coming in and out, the known drug users, and that we had been watching the place for quite some time."

Also, at the hearing on the motion to suppress Magistrate Massingale testified that Deputy Kirk told him "that they had made several drug buys from this location [the Nations' house]; and he had reason to believe that drug traffic was still going on; and they had kept the place under surveillance; and they had seen certain cars going in and out that led him [Kirk] to believe that there was still an ongoing drug problem there. And, basically that's about all I can remember."

" ' "Staleness" as relates to probable cause is not always measured by the interval between the commission of the crime and the issuance of the search warrant. "Staleness" as relates to probable cause is measured by the probability that the thing to be seized is located at the place to be searched and it involves the interval between (i) the time when the thing to be seized is indicated by the evidence or information to be at the place to be searched and (ii) the time when the search warrant is issued.' *Mitchell v. State*, 239 Ga. 456, 458 (238 SE2d 100). Reading the facts presented in a common sense manner, the [magistrate] was entitled to conclude that there was a probability of the continuing presence of illegal drugs on the premises." *Shrader v. State*, 159 Ga. App. 522 (1), 523-524, supra. See *Tabb v. State*, 250 Ga. 317, 323 (297 SE2d 227).

" 'The task of the issuing magistrate is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the "veracity" and "basis of knowledge" of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place. And the duty of a reviewing court is simply to

ensure that the magistrate had a "substantial basis for . . . conclud(ing)" that probable cause existed.' *Gates,* 103 SC at 2332 [*Illinois v. Gates,* 462 U. S. 213 (103 SC 2317, 76 LE2d 527)] quoted with approval in *State v. Stephens,* 252 Ga. 181 (311 SE2d 823) (1984)." *State v. Luck,* 252 Ga. 347, 348 (312 SE2d 791).

Under the particular facts and circumstances of the case sub judice, including facts indicating activity of a protracted and continuous nature, we find the magistrate was authorized to find probable cause for issuing the search warrant.

Inasmuch as the officers conducting the search, in the case judice, were on Nations' property pursuant to a valid search warrant, Deputy Kirk, who participated in the search, was entitled to testify as to the presence of the teetops in plain view during the search. See *State v. Shaw,* 170 Ga. App. 404, 405 (317 SE2d 298). The trial court did not err in admitting Deputy Kirk's testimony.

2. In his second enumeration of error the defendant contends that the trial court erred in allowing evidence of similar crimes into evidence. We have reviewed the transcript and find that the similar evidence submitted by the State established that the defendant was the perpetrator of the similar offenses and that the testimony concerning the independent crimes was relevant to showing the defendant's identity, motive, plan, scheme, bent of mind, and course of conduct. See *Hamilton v. State,* 239 Ga. 72 (235 SE2d 515), and *Sport v. State,* 253 Ga. 689 (1) (324 SE2d 184).

3. In addition to his other enumerations of error defendant asserts that "the trial court erred in considering prior convictions and aggravation of punishment which were not properly before the court in accordance with the Official Code of Georgia § 17-10-2." In the case sub judice, "evidence in aggravation" of punishment was made known by the State to defendant prior to defendant's first trial which ended in a mistrial on November 29, 1984. However, prior to defendant's second trial the State did not repeat its prior action of making known to defendant "evidence in aggravation."

The State argues that defendant's sentence "should not be set aside based solely on an interpretation of this statute [OCGA § 17-10-2] which requires duplication of filings and notifications to Appellant when there is no question that Appellant had notice and knowledge of his prior conviction and the State's intention to introduce such in aggravation." While we might be disposed to accept the argument of the State we are duty bound to follow the decision in *Hewell v. State,* 238 Ga. 578, 580 (2) (234 SE2d 497) (reversing our decision in *Hewell v. State,* 139 Ga. App. 622 (229 SE2d 92)), wherein our Supreme Court held: "In Division 2 of its opinion the Court of Appeals held that it was not error for the trial court to allow the state to introduce evidence of Hewell's prior convictions at the presentence hearing. Notice

of the intention to introduce this evidence was served on him prior to the first trial, but not prior to the second trial . . . A notice given prior to a former trial would not be clear notice that the sentences would be introduced at a subsequent de novo trial. It was error to allow the state to introduce evidence of Hewell's prior convictions over the objection that he had not been notified that they would be introduced."

Consequently, in the case sub judice the judgment as to sentence is reversed and the defendant must be re-sentenced after the State, should it desire to do so, is afforded an opportunity to make a current compliance with the provisions of OCGA § 17-10-2.

*Judgment affirmed as to conviction; reversed as to sentence. Banke, C. J., and Benham, J., concur.*

DECIDED MARCH 12, 1986 —
REHEARING DENIED APRIL 1, 1986 — 

*E. Neil Wester III*, for appellant.
*Jacques O. Partain III, District Attorney, Kermit N. McManus, Assistant District Attorney*, for appellee.