72608. AYERS v. THE STATE.
72609. JARRETT v. THE STATE.
72610. AYERS v. THE STATE.
(351 SE2d 692)

BEASLEY, Judge.

The three defendants were convicted of commercial gambling, OCGA § 16-12-22, communicating gambling information, OCGA § 16-12-28, and keeping a gambling place, OCGA § 16-12-23. Individually, Ellis Ayers and Edward Ayers, his son, were also each convicted of possession of cocaine, OCGA § 16-13-30; and Gene Jarrett was con-

victed of trafficking in cocaine, OCGA § 16-13-31.

1. The central core of each individual's defense involves violation of the disclosure provisions of the state and federal wiretapping laws. These issues are addressed in enumerations of error two through eight in each case, which we thus consider as a unit.

*Cox v. State,* 152 Ga. App. 453 (263 SE2d 238) (1979), discussed the portion of the Omnibus Crime Control and Safe Streets Act dealing with the interception and disclosure of wire or oral communications, 18 USC § 2510 et seq., and its relation to state legislation. Besides federal procedure for authorization of wiretaps the Act provided for concurrent state regulation of wiretaps. 18 USC § 2516 (2). The federal act establishes the minimum standards which must be met, but a state statute may provide for more stringent or exacting standards. Since Georgia does have provisions regulating wiretaps, OCGA § 16-11-60 et seq., both laws must be complied with where applicable. *Orkin v. State,* 236 Ga. 176, 179 (223 SE2d 61) (1976).

The federal law provides a comprehensive classification of situations under which information garnered by wiretap may be disclosed. 18 USC § 2517 (1-5). Reference is made to information provided by or to an "investigative or law enforcement officer," who is defined under 18 USC § 2510 (7) as "any officer of the United States or of a state or political subdivision thereof, who is empowered by law to conduct investigations of or to make arrests for offenses enumerated in this chapter. . . ." 18 USC § 2515 requires: "Whenever any wire or oral communication has been intercepted, no part of the contents of such communication and no evidence derived therefrom may be received in evidence in any trial [etc.] . . . if the disclosure of that information would be in violation of this chapter."

The Georgia provision as to disclosure of information is more precisely to the point. It reads: "Any publication of the information or evidence obtained under a warrant issued hereunder other than that necessary and essential to the preparation of and actual prosecution for the crime specified in the warrant shall be an unlawful invasion of privacy under this part and shall cause such evidence and information to be inadmissible in any criminal prosecution." OCGA § 16-11-64 (b) (8).

There are three instances of disclosure about which defendants complain. First, at the hearing on the motion to suppress members of the general public were admitted. Defendants urge that their objections to permitting "outsiders" should have been sustained and that the hearing should have been "closed." Second, the state obtained an order from a senior judge to permit it to disclose information obtained from wiretaps to an IRS excise tax agent who made wagering tax assessments. The agent was used to interpret intercepted phone conversations and prepare the case against defendants. Defendants

contend the senior judge was not authorized to issue an order permitting the disclosure and that the disclosure without valid permission violated both state and federal law. Third, the information was utilized in presenting the cases to the grand jury with regard to the drug related offenses. Defendants contend this was without prior authorization as required by 18 USC § 2517 (5), which mandates that when evidence of other crimes is to be used there must be a subsequent application to a judge for determination as to whether the contents were intercepted in accordance with the statutory provisions.

(a) Federal statute.

Contrary to defendants' assertions, 18 USC § 2515 does not require exclusion of evidence where there is an unauthorized disclosure.

*Resha v. United States,* 767 F2d 285, 288 (6th Cir. 1985) held: "We construe § 2515 to permit suppression of evidence only if that evidence was derived from unlawful, improper or unauthorized interceptions of wire or oral communications. It does not authorize suppression for disclosures of such information, even if they violate § 2517. This determination is based upon the legislative history of the Act and court decisions that require § 2515 to be read 'in light of' 18 U.S.C. § 2518 (10) (a). . . ." The latter provides that an aggrieved person may move to suppress the contents of a Chapter 25 wire or oral communications intercept only on the grounds that "(i) the communication was unlawfully intercepted; (ii) the order of authorization or approval under which it was intercepted is insufficient on its face; or (iii) the interception was not made in conformity with the order of authorization or approval."

*Resha* relied upon *United States v. Donovan,* 429 U. S. 413, 432 (97 SC 658, 50 LE2d 652) (1977) which held: "Section 2515 expressly prohibits the use at trial, and at certain other proceedings, of the contents of any intercepted wire communication or any evidence derived therefrom 'if the disclosure of that information would be in violation of this chapter.' The circumstances that trigger suppression under § 2515 are in turn enumerated in § 2518 (10) (a). . . ."

Thus, none of the grounds asserted present a reason for excluding the evidence predicated on 18 USC § 2515. Since federal law was the sole basis for enumeration of error 8, it falls. This leaves only the question of whether the first (enumeration of error two) and second (enumerations of error three through seven) situations show a violation of state law.

(b) State statute.

(1) There was no reversible error in refusing to exclude the several spectators and conduct a closed hearing, as contended in enumeration two. *Waller v. Georgia,* 467 U. S. 39 (104 SC 2210, 81 LE2d 31) (1984), which reversed *Waller v. State,* 251 Ga. 124 (303 SE2d 437) (1983), established that the Sixth Amendment right to a public trial

applies to a suppression hearing. It further declared that under *Press-Enterprise Co. v. Superior Court of Cal.*, 464 U. S. 501 (104 SC 819, 78 LE2d 629) (1984), "the party seeking to close the hearing must advance an overriding interest that is likely to be prejudiced, the closure must be no broader than necessary to protect that interest, the trial court must consider reasonable alternatives to closing the proceeding, and it must make findings adequate to support the closure." *Waller*, supra at 48.

The reason is that openness of criminal proceedings is so highly valued that it is given presumptive status. "The open trial thus plays as important a role in the administration of justice today as it did for centuries before our separation from England. The value of openness lies in the fact that people not actually attending trials can have confidence that standards of fairness are being observed; the sure knowledge that *anyone* is free to attend gives assurance that established procedures are being followed and that deviations will become known. Openness thus enhances both the basic fairness of the criminal trial and the appearance of fairness so essential to public confidence in the system. *Richmond Newspapers, Inc. v. Virginia*, 448 U. S., at 569-571." *Press-Enterprise*, supra, 464 U. S. at 508. See also *Waller*, supra, 467 U. S. at 44-45. Thus the statute limiting publication does not automatically override the openness principle or the First Amendment and turn criminal proceedings into closed events. See also *Cox v. State*, supra at 463 (3). In *Waller* the state desired the closure and defendant objected on Sixth Amendment public trial grounds. Here the defendants objected and sought closure under the statute but failed to establish such overriding interest that would require a closure as a matter of law.

(2) Construing the necessity for restricting publication to those instances necessary and essential to the preparation of an actual prosecution for the crime, the Supreme Court in *Orkin*, supra at 189, rejected the argument that "necessary and essential" meant indispensable, i.e., only those publications so fundamentally required for criminal prosecution that they cannot be avoided. "The construction to be given the statute is rather what is reasonably necessary and essential to the preparation of and actual prosecution for a crime. What is reasonable will depend upon the facts of a given case and must necessarily rest in the controlled discretion of the district attorney, subject to review by the trial court. Where there is evidence to support the decision of a trial judge on motion to suppress evidence, that decision will not be disturbed on appeal." Accord *Cox v. State*, supra at 463 (3); *Van Nice v. State*, 180 Ga. App. 112 (348 SE2d 566) (1986), which points out that this includes information obtained to further investigation about other crimes.

Regardless of whether the senior judge had authority to approve

publication of the information, we find that, even without prior judicial approval, the trial court did not abuse its discretion in refusing to suppress the evidence because of the district attorney's action in disseminating the information to the IRS agent in furtherance of the investigation. Enumerations of error three through seven also fall.

2. The remaining commonly asserted ground is found in the Ayerses' enumerations of error one. Basically, defendants contend that the affidavit offered to authorize the wiretap was riddled with inaccurate, false, conclusory and stale information.

The standard of probable cause for a wiretap authorization is the same as the standard for a regular search warrant. *Tookes v. State*, 159 Ga. App. 423 (1) (283 SE2d 642) (1981). Since the advent of *Illinois v. Gates*, 462 U. S. 213 (103 SC 2317, 76 LE2d 527) (1983) the "two-pronged" test for search warrants of *Aguilar v. Texas*, 378 U. S. 108 (84 SC 1509, 12 LE2d 723) (1964), and *Spinelli v. United States*, 393 U. S. 410 (89 SC 584, 21 LE2d 637) (1969), has been supplanted by a "totality of circumstances" test. *State v. Stephens*, 252 Ga. 181, 182 (311 SE2d 823) (1984). As a result, our review of the affidavit submitted in support of the wiretap authorization concerns whether the trial court had a substantial basis for concluding that probable cause existed. *Beal v. State*, 175 Ga. App. 234, 235 (333 SE2d 103) (1985).

We also note that because of *Gates*, the determination of staleness has been modified so that now that issue is included in the broad overview of "totality of circumstances." *State v. Luck*, 252 Ga. 347 (312 SE2d 791) (1984). Thus, the issuing magistrate's task is to make a practical common sense decision, based on all the circumstances presented in the affidavit, whether there is a fair probability that evidence of a crime will be uncovered by the wiretap. The reviewing court must insure there was a substantial basis for the magistrate's conclusion. *Luck*, supra at 348.

Here the affidavit contained a long, detailed account of various events over a course of years which articulated the basis for concluding that the defendants were engaged in illegal gambling activity. Of course, not all the events were current, but when an ongoing activity is indicated, the passage of time is less significant than in the case of a single, isolated transaction. *Lewis v. State*, 255 Ga. 101, 104 (335 SE2d 560) (1985). And although not all the recitations were accurate, on the whole there was a sufficient showing to sustain a finding of a fair probability that criminal activity would be discovered by the wiretap. That being true, it was not error to deny the motion to suppress.

3. The eight enumerations of error thus far discussed comprise all the grounds urged on behalf of Edward Ayers, so the judgment as to him must be affirmed.

4. We now consider three enumerations of error (numbers nine through eleven) raised separately by Ellis Ayers, Edward's father.

(a) Enumerations of error nine and ten involve whether his arrest warrant was defective, thus resulting in the invalidity of the search and seizure of his vehicle.

Enumeration nine is an incomplete assertion regarding the violation of defendant's Fourth and Fourteenth Amendment rights because the arrest warrant was alleged to be defective. Enumeration ten urges that, since the state was allowed after a period of three months to reopen the suppression hearing to introduce the arrest warrant, defendant should have been allowed to amend his motion to suppress to attack the credibility of the witness for the state.

We begin by noting that there were affidavits supporting the arrest warrants which were in substantial compliance with the statutory form. OCGA § 17-4-45. Our laws impose no requirements for probable cause evidentiary facts in the affidavits. OCGA § 17-4-40 et seq. *Roberts v. State*, 252 Ga. 227, 228 (1) (314 SE2d 83) (1984); *Smith v. Stynchcombe*, 234 Ga. 780, 781 (218 SE2d 63) (1975). Insofar as the Fourth Amendment to the United States Constitution imposes a requirement of probable cause, *Cofield v. State*, 247 Ga. 98, 109 (5) (274 SE2d 530) (1981), a determination as to such prerequisite may be made based upon oral testimony independent of written information contained in an affidavit. *Devier v. State*, 253 Ga. 604, 609 (5) (323 SE2d 150) (1984); *Butler v. State*, 254 Ga. 637, 639 (332 SE2d 654) (1985).

Insofar as any issue is raised, we do not find the defendant was deprived of any constitutional rights predicated on an allegedly defective affidavit.

At the July 24, 1985 hearing defendant was aware of the state's reliance on oral testimony to support probable cause. On July 24, defendant filed another motion to suppress the evidence seized as a result of the search of his person and vehicle on the grounds there were no underlying affidavits accompanying the arrest warrants; there was no evidence of the administration of an oath and no record of the proceeding. No further action was taken prior to the trial court's ruling on the motions to suppress on August 26.

Just before trial on October 21 defendant attempted to present another motion attacking the credibility of the state's witness who testified as to oral testimony before the magistrate. The trial court, acting within its discretion, was authorized to find the motion was untimely. *Holton v. State*, 243 Ga. 312, 316 (3) (253 SE2d 736) (1979).

(b) Defendant contends that his January 1962 conviction in the U. S. District Court was erroneously admitted, over objection, at his pre-sentence hearing. Defendant argues that the federal statutes he was charged with violating were subsequently declared unconstitu-

tional in *Marchetti v. United States*, 390 U. S. 39 (88 SC 697, 19 LE2d 889) (1968) and *Grosso v. United States*, 390 U. S. 62 (88 SC 709, 19 LE2d 906) (1968). It is further urged that the rulings are retroactive under *United States v. U. S. Coin & Currency*, 401 U. S. 715, 723 (91 SC 1041, 28 LE2d 434) (1970) and that such void conviction could not be introduced in a hearing under OCGA § 17-10-2.

The conviction to which defendant refers was his plea of nolo contendere, while represented by counsel, to charges of violating 26 USC §§ 7203 and 7272. The provisions found to be unconstitutional vis-a-vis a plea of self-incrimination in *Marchetti* and *Grosso* were not the same, being 26 USC §§ 4401, 4411 and 4412, although they are interrelated. See *United States v. Kelley*, 395 F2d 727 (2nd Cir. 1968).

*Marchetti*, supra at 42, held the federal statutes may "not be employed to punish criminally those persons who have defended a failure to comply with their requirements with a proper assertion of the privilege against self-incrimination." In view of his plea it would appear that defendant failed to assert his right and thereby waived it. However, the federal courts have applied *Marchetti* and *Grosso* retroactively even where a criminal defendant pleaded guilty. In *United States v. Lucia*, 416 F2d 920 (1969) the Fifth Circuit held that because at the time of the plea under *United States v. Kahriger*, 345 U. S. 22 (73 SC 510, 97 LE 754) (1953), there was no privilege of self-incrimination as against the federal wagering provision, a defendant had no knowledge of his right and had not waived it by his plea of guilty. The court cited *Grosso*, supra at 71, in support of its holding to retroactively void a conviction obtained before 1968. In *United States v. Russo*, 358 FSupp. 436 (N. J. 1973), this principle was applied even though defendant's probationary sentence had expired. While not fully persuaded by the reasoning of these and similar cases,[1] we are bound to follow decisions of the United States Supreme Court. See *U. S. Coin & Currency*, supra, and *United States v. Johnson*, 457 U. S. 537, 550 (102 SC 2579, 73 LE2d 202) (1982), holding that full retroactivity is a necessary adjunct where the Court found a particular constitutional guarantee immunizes a defendant's conduct from punishment, as in this case.

The admission into evidence at the pre-sentence hearing of an illegal conviction voids the sentence. *Harrison v. State*, 136 Ga. App. 71, 72 (2) (220 SE2d 77) (1975). Defendant's conviction must be affirmed but his sentence is reversed and remanded for resentencing.

---

[1] Compare, e.g., *Brady v. United States*, 397 U. S. 742, 757 (90 SC 1463, 25 LE2d 747) (1970) which held: "a voluntary plea of guilty intelligently made in the light of the then applicable law does not become vulnerable because later judicial decisions indicate that the plea rested on a faulty premise."

5. There are 18 separate enumerations of error raised by Jarrett: number one and numbers nine through twenty-five. They are considered in ascending order.

(a) Enumeration of error 1.

Defendant contends that the sudden decision by the prosecution and the trial court to try the drug-related and gambling charges together when defense counsel was only prepared for the drug-related case deprived him of due process, and that the failure to grant a continuance was an abuse of discretion.

In argument there is no reliance on due process but instead on the principle of *In re Brookins*, 153 Ga. App. 82 (264 SE2d 560) (1980), that the court should uphold an agreement as to the order of disposition of the criminal charges.

At the time the cases were called defense counsel objected, but no request for a continuance was made. In any event, a tape of conversation between defense counsel and the district attorney indicates no agreement and discloses that defense counsel was aware that all the charges could be tried together. Thus, *In re Brookins* is inapposite and no abuse of the trial court's discretion was shown. *Horton v. State*, 132 Ga. App. 407 (208 SE2d 186) (1974).

(b) Enumeration of error 9.

The affidavit for the warrant to search Jarrett's residence is attacked as containing conclusory, inaccurate, false and stale statements and was devoid of any objective facts which would support probable cause. Its execution had yielded $33,000 in cash, gambling records, and 30.5 grams of 45 percent pure cocaine.

Jarrett further argues that the affidavit contained no facts to support a conclusion derived from the telephone conversations that he was engaged in commercial gambling, was communicating gambling information or was keeping a gambling place; nor did the affidavit assert, in conclusory form or otherwise, that the affiant had the training, education or experience in the investigation of gambling-related activities which would allow him to draw the conclusions he drew.

First, the affidavit stated that during the course of the electronic surveillance initiated on June 11, 1984, two conversations took place between Edward Ayers and an unidentified male at two different telephone numbers called by Ayers. Both telephone numbers were listed to Jarrett at an apartment house on Buford Highway. The affiant stated that these conversations "involved bettors' balances, point spreads on professional sporting events, and odds established for gambling on professional sporting events"; that criminal records revealed Jarrett had been arrested four times in Georgia on various gambling charges and convicted once for gambling; and that based on these facts and circumstances the affiant had probable cause to believe Jarrett was conducting a gambling operation on the premises us-

ing the two telephone numbers called during the surveillance.

Next, it is clear from the record and transcript that the police officers, including affiant, were experienced in conducting such investigations and well-versed in what appellant refers to as "the patois of gamblers." The magistrate was presented not only with the affidavit and search warrant as to appellant's residence, but also with the affidavits and warrants attendant to the arrest and search of the other defendants involved in the lengthy investigation.

Insofar as appellant's staleness challenge is concerned, "[w]hen the affidavit indicates the existence of an ongoing scheme [such as engaging in commercial gambling] the passage of time becomes less significant than would be the case with a single, isolated transaction. [Cit.]" *Luck*, supra; *Cline v. State*, 178 Ga. App. 470 (1) (343 SE2d 506) (1986). Moreover, the information was obtained first-hand and did not depend upon the reliability of uncorroborated, anonymous hearsay information, which is most frequently the basis for invalidation of a search warrant. See, e.g., *Poole v. State,* 175 Ga. App. 374 (1) (333 SE2d 207) (1985).

It is now well-established in determining whether to issue a search warrant, that "[t]he task of the issuing magistrate is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him . . . there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Illinois v. Gates*, 462 U. S. 213, 238, supra. Accord *Stephens*, supra. *Massachusetts v. Upton*, 466 U. S. 727 (104 SC 2085, 2086, 80 LE2d 721) (1984), reaffirms that: " '[A]lthough in a particular case it may not be easy to determine when an affidavit demonstrates the existence of probable cause, the resolution of doubtful or marginal cases in this area should be largely determined by the preference to be accorded to warrants.' " We find no ground for reversal.

(c) Jarrett's enumerations of error 10, 11, 12 and 13 allege that there was not a "scrap" of evidence to support the offenses for which he was indicted, and that the trial court thus erred in denying his motions for directed verdict. But when, as here, the evidence viewed in the light most favorable to the verdict is sufficient to enable a rational trier of facts to find the essential elements of the crimes charged beyond a reasonable doubt, *Rautenberg v. State*, 178 Ga. App. 165 (1) (342 SE2d 355) (1986) and cits., such is not error.

(d) Enumerations of error 14, 23 and 24.

The instructions to the jury on actual and constructive possession were not subject to the objection made at trial, were accurate statements of the law, *Anderson v. State*, 166 Ga. App. 459, 460 (3) (304 SE2d 550) (1983), and were applicable to the facts of the case. *Ramsay v. State*, 175 Ga. App. 97, 99 (7) (332 SE2d 390) (1985); *State v.*

*Lewis*, 249 Ga. 565 (292 SE2d 667) (1982).

(e) Enumerations of error 15 through 20.

The enumerations of error complaining of the failure to give six defense requests to charge are without merit, the grounds either having been abandoned, *Bodie v. State*, 173 Ga. App. 442, 443 (2) (327 SE2d 232) (1985), or the trial court having fairly charged the substance of the requests. *Shirley v. State*, 245 Ga. 616, 619 (3) (266 SE2d 218) (1980).

(f) Enumeration of error 21.

Defendant contends the trial court erred in failing to grant a mistrial because of certain remarks which attacked the character of defense counsel, were inflammatory and fundamentally unfair. After counsel moved for a mistrial the trial court informed the jury that the district attorney's statements were improper and instructed the jurors to disregard those remarks.

Where, as here, the trial court takes prompt corrective action to prevent harm to the accused, unless it is clear that such action failed to eliminate the harmful effect, we find no abuse of discretion. *Johnson v. State*, 142 Ga. App. 526 (1) (236 SE2d 493) (1977); *Campbell v. State*, 143 Ga. App. 445, 446 (238 SE2d 576) (1977).

(g) Enumeration of error 22.

The prosecuting attorney's statement during oral argument that "there's no evidence that [defendant] is not the person who received these telephone calls," did not constitute impermissible comment on defendant's failure to testify. Instead, it was proper argument on the defense failure to rebut the state's evidence in the absence of a showing that it was the prosecution's manifest intention to comment on defendant's failure to testify, or that the statement was of such character that the jury would necessarily take it to be a comment on defendant's failure to testify. *Ranger v. State*, 249 Ga. 315, 319 (3) (290 SE2d 63) (1982); *Lowe v. State*, 253 Ga. 308, 309 (1) (319 SE2d 834) (1984).

(h) Enumeration of error 25.

Contrary to defendant's assertions, it was not error to charge regarding parties to a crime, OCGA §§ 16-2-20 and 21. *Battle v. State*, 231 Ga. 501 (202 SE2d 449) (1973); *State v. Lewis*, supra.

*Judgments affirmed in Case Nos. 72609 and 72610; conviction affirmed, sentence reversed and case remanded in Case No. 72608. Deen, P. J., and Benham, J., concur.*

DECIDED DECEMBER 2, 1986 —
REHEARING DENIED DECEMBER 11, 1986 —

*Herbert Shafer*, for appellants.

Robert E. Wilson, District Attorney, John H. Petrey, Susan Brooks, Assistant District Attorneys, for appellee.